ATLANTIC CASUALTY AND FIRE
INSURANCE COMPANY, a South
Carolina corporation, Plaintiff,

v.

NATIONAL AMERICAN INSURANCE
COMPANY, Intervenor/Defendant.

No. 93–2097–CIV–T–23E.

United States District Court,
M.D. Florida,
Tampa Division.

Jan. 10, 1996.

Charles Paul Schropp, William R. Daniel and Raymond T. Elligett, Jr., Schropp, Buell & Elligett, P.A., Tampa, FL, for Atlantic Casualty & Fire Insurance Company.

Mark H. Smith, Bradley, Johnson, Nelson & Laurent, PA, Lake Wales, FL, for Para–Marine, Inc.

George E. Carr, O'Neill, Chapin, Marks, Liebman, Cooper & Carr, Orlando, FL, for National American Insurance Company.

## *ORDER*

McCOUN, United States Magistrate Judge.

THIS MATTER is before the court on cross motions for summary judgment, the **Motion of National American Insurance Company for Final Summary Judgment, a Dispositive Motion,** (Doc. 38) and **Atlantic Casualty and Fire Insurance Company's Motion for Partial Summary Judgment,** (Doc. 43). The parties have filed memorandums in support of their motions, (Doc. 55, 44), and in opposition of the cross-motions, (Docs. 47 and 53). The parties have also

filed an Agreed Statement of Facts, (Doc. 36), and a Supplemental Agreed Statement of Facts, (Doc. 37).[1]

## I.

Atlantic Casualty and Fire Insurance Company (hereinafter, "Atlantic Casualty") seeks a declaratory judgment establishing its rights and obligations under certain policies of insurance with Indian River Transport Company, Inc. (hereinafter, "Indian River"). National American Insurance Company (hereinafter, "NAICO"), the insurer of Para–Marine, Inc. (hereinafter "Para–Marine"), has intervened and seeks its own declaratory judgment that Atlantic Casualty is or was obligated to defend Para–Marine, its employee, Donald Greene, or Indian River under its primary policy with Indian River and is now required to further indemnify NAICO.

In essence, this is a coverage dispute between two insurers. The ultimate issue resulting from the cross motions is whether Atlantic Casualty's primary policy is excess over NAICO's policy or co-primary with NAICO's policy for claims arising out of a June 20, 1993 accident.

Para–Marine and Indian River are interstate motor carriers regulated by the Interstate Commerce Commission. They are related companies, principally owned by the same individual. On June 20, 1993, a tractor-trailer rig driven by a Para–Marine employee was involved in a tragic accident in North Carolina when the rig slammed into a van carrying fifteen passengers. Three of the passengers in the van were killed. The other twelve were seriously injured. Several lawsuits resulted. The fifteen claims were ultimately settled by NAICO for $1,362,500.00. NAICO paid out $1 Million, its policy limits. Para–Marine paid the balance, although it was later reimbursed by Atlantic Casualty.

The NAICO policy at issue (policy no. TPO83809IH) is a standard form Truckers Liability Insurance Policy issued to Para–Marine and providing $1 Million primary coverage. The policy contained an MCS–90 form endorsement as required by the Motor Carrier Act of 1980.

Atlantic Casualty issued a standard form Truckers Liability Insurance Policy to Indian River providing $1 Million primary coverage (policy no. TAL1001249). This policy also included the MCS–90 form endorsement. Atlantic Casualty also issued an excess liability policy (policy no. TEX200438).

The tractor involved in this accident was owned by Para–Marine. The trailer being pulled at the time of the accident was owned by PLM Rental but leased to Indian River. At the time of the accident, the tractor and trailer were being used with the consent of Para–Marine and Indian River respectively.

MCS–90 endorsements are required by federal law for all interstate motor carriers pursuant to sections 29 and 30 of the Motor Carrier Act of 1980. The respective MCS–90 endorsements in each primary policy here state in pertinent part,

This insurance is primary and the company shall not be liable for amounts in excess of *$1,000,000.* for each accident. . . .

. . . In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy . . . It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment,

---

1. Apart from the issues raised by the cross-motions, there remains an issue as to whether or not Para–Marine was a named insured under Atlantic Casualty's policies. For a time, the policies listed as Named Insured, "Indian River Transport Co., Para Marine, Inc. dba." For purposes of these Motions, the parties do not rely upon this language as proof that Para–Marine had coverage under Atlantic Casualty's policies. If necessary, the issue raised by the language will be litigated after resolution of the cross-motions.

within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company....

(*See* Doc. 36, Exh. A).

Atlantic Casualty's primary policy with Indian River contains the following pertinent language concerning "Other Insurance",

This Coverage Form's Liability Coverage is primary for any covered 'auto' while hired or borrowed by you and used exclusively in your business as a 'trucker' and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered 'auto' while hired or borrowed from you by another 'trucker'. However, while a covered 'auto' which is a 'trailer' is connected to a power unit, this Coverage Form's Liability Coverage is:

(1) On the same basis, primary or excess, as for the power unit if the power unit is a covered 'auto'.

(2) Excess if the power unit is not a covered 'auto'.

(*See* Doc. 36, Exh. B).

## II.

According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is only appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The party seeking summary judgment bears the initial burden of demonstrating to the court the basis for the motion and identifying those portions of the pleadings and evidentiary submissions which show an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun Publishing Co.,*

9 F.3d 913, 918 (11th Cir.1993). If the ultimate burden of persuasion at trial rests on the non-movant, the party seeking summary judgment can meet this standard either by demonstrating that the non-movant's evidence is not sufficient to establish an essential element of the claim, or by submitting affirmative evidence that negates an essential element of the claim. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden then shifts to the non-movant to establish the existence of an essential element to the claims, on which they bear the burden of proof at trial. *Id.* To satisfy this burden, the non-movant cannot rest on the pleadings, but must, by affidavit or other appropriate means, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

In deciding a motion for summary judgment, the court must determine whether there exists genuine, material issues of fact to be tried. If there are not, the movant is entitled to a judgment as a matter of law. *See Dominick v. Dixie National Life Insurance Company,* 809 F.2d 1559 (11th Cir. 1987). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Hairston,* 9 F.3d at 919 (citations omitted). It is the substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In this instance, each party has filed suit for declaratory judgment to resolve a dispute as to an insurance coverage issue. The ultimate issue is succinctly framed by the cross-motions for summary judgment. After putting aside a factual dispute explained in footnote 1 above, the parties have submitted two statements of agreed facts and exhibits. (*See* Docs. 36, 37). With one exception,[2] the

---

**2.** There are disputes over certain "factual" statements contained in NAICO's affidavit by Tony Gulley. (*See* Docs. 41, 48). At arguments, these "facts" were agreed to be set aside as insignificant to the legal argument of NAICO. Also, in its response to NAICO's motion, Atlantic Casualty questions the authenticity of the MCS–90 endorsements appended to Mr. Gulley's affidavit. (*See* Doc. 47 at p. 10). In this court's view, the parties are bound, now and forever, by the agreed statements of facts. The court has relied upon facts gleaned from Gulley and incorporated in the agreed statements of facts. Likewise, the court has relied upon the policies and the MCS–

parties appear to agree that the dispute in this case is a legal one, rather than a factual one, and both agree the matter is ripe for resolution by way of summary judgment.

### III.

As Atlantic Casualty argues the matter, existing precedent in this circuit supports a determination that its policies of insurance with Indian River provide excess coverage over NAICO's policy with Para–Marine, regardless of the existence of MCS–90 provisions. The argument is founded chiefly upon the Fifth Circuit decision in *Carolina Casualty Insurance Company v. Underwriters Insurance Company*, 569 F.2d 304 (5th Cir. 1978). Although *Carolina Casualty* dealt with a different ICC endorsement requiring security against personal injury and property damage, the case is significant because it rejects a similar argument made by an insurer that the ICC endorsement makes insurance coverage primary "in all circumstances and for all purposes as a matter of law. . . ." *Id.* at 311. Furthermore the case establishes, as a policy statement, that the Interstate Commerce Act and regulations are intended to protect the public and shippers from losses at the hands of interstate carriers and are not intended to effect the relationship between insurers and insureds. Atlantic Casualty argues that in light of this precedent and because the policy provisions establish that its coverage is excess over other coverage, it is entitled to a summary judgment.

The heart of NAICO's argument is that because of Atlantic Casualty's claims practice in this instance and because of the 1980 statutory amendments requiring MCS–90 endorsements, this court must fashion a ruling founded upon different policy considerations and reach a different result. By NAICO's argument, the court must create and enforce rules of reasonable claims practice and administration upon insurance companies, such as Atlantic Casualty, so as to cause compa-

nies to adjust liability claims in a manner consistent with the public interest.

As a vehicle to reach this result, NAICO argues a blend of state and federal statutory and common law together with a dash or two of public policy. First, NAICO argues that *Carolina Casualty* is not controlling since it predates the 1980 Motor Carrier Act and dealt with a different endorsement. By its argument, the MCS–90 endorsement does alter the relationship between insurers by making policies primary regardless of other policy provisions when the endorsement states coverage is primary. Furthermore, NAICO argues that Atlantic Casualty has waived its right to claim an excess position and is now estopped under Florida claims administration law from asserting this position against NAICO. Because the MCS–90 endorsements make coverage primary, NAICO claims the right to a summary judgment. Because of the MCS–90 endorsement or because Atlantic Casualty is estopped to assert an excess position, NAICO argues Atlantic Casualty's Motion must be denied.

### IV.

#### A.

■ It appears an accepted principle of insurance law that where an accident arises out of the use of a tractor-trailer it arises out of the use of both regardless of which part of the unit was involved in the accident. As a result, the insurance policies covering each unit come into play. *Blue Bird Body Company, Inc. v. Ryder Truck Rental, Inc.*, 583 F.2d 717, 726–27 (5th Cir.1978). The parties do not dispute this principle and only argue over whether the Atlantic Casualty policy for the trailer should be considered as providing co-primary or excess coverage. Because this court has no reason to conclude that the advent of the MCS–90 endorsement would bring about a different result from that reached in *Carolina Casualty* and because this court is not at liberty to ignore binding precedent and fashion different rules requiring different results, the court must find, as a

90 endorsements attached to the policies which are appended as exhibits to the agreed statements of facts. In the court's view, by agreement of the parties, these factual disputes, if that

is indeed what they are, are waived as a basis of relief from the granting of a summary judgment on either motion.

matter of law, that the Atlantic Casualty policy here at issue provides excess coverage.

■ In rejecting other approaches to a resolution of the issue of the effect of ICC endorsements on insurance policies, the court in *Carolina Casualty* stated that the purpose of the Interstate Commerce Act was to assure to members of the public and shippers that carriers would have independent financial responsibility, up to the prescribed limits, to pay for losses created by the carrier's operations. The court rejected the view that the ICC intended to protect insurers as well as insureds, at least insofar as disputes arose between insurers. *Id.* at 311, 312. No Eleventh Circuit case has altered this established precedent.

A subsequent Fifth Circuit decision applying the provisions of the Motor Vehicle Act of 1980, has reaffirmed the holding and the policy statement in *Carolina Casualty.* In *Carter v. Vangilder,* 803 F.2d 189 (5th Cir. 1986), the court affirmed a district court decision that the ICC endorsement in a trailer insurer's policy, as a matter of federal law, did not require the court to read out of the policy the excess coverage provisions. Citing to *Carolina Casualty,* the court held that one company could not "disavow its primary insurer status on the theory that public policy demands that this be pushed off as to [the other insurer]." *Carter* at 192. The court also rejected the argument that because the tractor and trailer were joined as a single unit, the liability must be shared on a pro rata basis, finding that such a ruling would require the rewriting of express terms of the policies. *Id.* at 192, 193. Thus, even after the adoption of the Motor Carrier Act of 1980, the Fifth Circuit has continued its same approach to the import of ICC endorsements.

Express provisions in the policies continue to be of importance even if there are limitations to coverage. In *Contrans, Inc. v. Ryder Truck Rental, Inc.,* 836 F.2d 163 (3rd Cir.1987), the court affirmed a district court decision granting a trailer insurer summary judgment on a declaratory judgment action where the trailer insurer argued that its liability coverage on the trailer was excess to the primary coverage of another insurer. The MCS–90 endorsement was not at issue.

Instead, the court examined the terms of the contracts and "constrained by the plain meaning of the policy terms[,]" concluded that the trailer insurer's policy provided excess coverage. *Id.* at 172. Policy provisions remain of primary importance in determining the relationship between insurers and insureds. While insurance companies may not avoid coverage in the face of endorsements, such as MCS–90 endorsements, they may nonetheless set conditions or limitations on that coverage not inconsistent with the Act.

At least one circuit has adopted a different rule based on a different perception of policy. In *Empire Fire & Marine Insurance v. Guaranty National Insurance,* 868 F.2d 357 (10th Cir.1989), the court, upon a review of case law, found three varying interpretations of the effect of the ICC endorsement, each interpretation requiring a different legal result. *See, id.* at 361. Upon consideration, the court rejected the approach in the Fifth Circuit and held that in the Tenth Circuit the law is,

The ICC endorsement *negates any inconsistent limiting provisions in the insurance policy* to which it is attached, regardless of whether a shipper or a member of the public is involved in the dispute *or whether the dispute is among insurance companies.* (Emphasis added).

*Id.* at 362. In the court's view, "excess coverage" clauses, as limitation or conditions of coverage, were the precise type of provision intended to be rendered ineffective by ICC endorsements and "[o]nce the ICC endorsement removes the 'excess coverage' clause, the policy is treated as affording primary coverage." *Id.* at 363. Since the other company's policy provided primary coverage even without an endorsement, the policies were found to be co-primary as a matter of law.

In *Railhead Freight Systems v. United States Fire Insurance Company,* 924 F.2d 994 (10th Cir.1991), the court addressed the situation where both the lessor and lessee of a truck had policies with the ICC endorsement. In resolving the dispute over primary coverage, the court looked to the language of the policies in deciding which was primary. It does not appear that the Tenth Circuit has

decided a case in which the facts raised a coverage dispute similar to the instant matter. *Railhead* suggests that even in the Tenth Circuit the policy provisions would play a key role in the resolution of the dispute.

NAICO would urge that the language of the MCS–90 endorsement is clear and is intended to make all policies which state on the endorsement that they are primary to be primary regardless of other limiting language. Thus, the MCS–90 endorsement would, as a matter of law, alter legal relationships, even where the dispute is between insurers. While recognizing that the Fifth Circuit has declined to rule in this fashion, NAICO urges that this case calls for a different rule based on additional public policy considerations and the bad faith of Atlantic Casualty.

However, in the lone Eleventh Circuit decision discussing the effect of ICC endorsements in insurance disputes, the court reiterated that such endorsements "do not alter or affect the obligations between the insured and the insurer, or where there is more than one insurer, the apportionment of liability between them." *Empire Fire & Marine Ins. Co. v. J. Transport, Inc.,* 880 F.2d 1291, 1298 (11th Cir.1989). The court gave no indication that an approach contrary to *Carolina Casualty* would be applied in this circuit even after the advent of the MCS–90 endorsement.

This court finds that *Carolina Casualty* is binding precedent and requires it to reject NAICO's argument that the very inclusion of these endorsements makes both policies primary. Such a ruling is not only consistent with precedent, but consistent with the express terms of the endorsements themselves. Beyond the express language relied upon by NAICO, the MCS–90 endorsements also state that the terms, conditions and limitations in the policy remain in full force and binding effect as between the insured and the company. Under *Carolina Casualty* there is no need to automatically extinguish an excess clause "as it affects an insured or other insurers who clamor for part or all of the coverage." *Supra* at 312. To borrow a quote from *Carolina Casualty,* "[NAICO] in-

sured the risk that a [user] might incur liability. [NAICO] cannot disavow its primary insurer status on the theory that public policy demands that this be pushed off onto [Atlantic Casualty]." *Id.*

■ The "other insurance" provisions of Atlantic Casualty's policy with Indian River remain in effect and prescribe that coverage is "excess over any other collectible insurance for any covered 'auto' while hired or borrowed from [Indian River] by another 'trucker'." As in this instance, where such covered auto is a trailer connected to another power unit, the coverage is either on the same basis, primary or excess, as the power unit if the power unit is a covered auto or excess if the power unit is not a covered auto. The power unit was not a covered auto in the circumstances of this case.

Here, Indian River's trailer was in use with Para–Marine's tractor. The rig was being driven by Para–Marine's driver who has testified that he never worked for Indian River and merely picked up a trailer at Para–Marine's yard one trip prior to the trip on which the accident occurred. Thus, it appears that the trailer had been borrowed by Para–Marine for use in its business, conducted under its certificate from the ICC. Under these circumstances, the policy with Indian River provides excess over coverage to that provided by NAICO, regardless of the MCS–90 endorsement. NAICO cannot shift a portion of its primary coverage off on Atlantic Casualty.

NAICO is not entitled to a summary judgment that the policies are co-primary on these grounds.

**B.**

NAICO also argues that Atlantic Casualty is precluded from asserting its excess over position in this lawsuit by reason of waiver and estoppel and urges such grounds as a basis to deny Atlantic Casualty's Motion for Partial Summary Judgment. This argument rests upon Atlantic Casualty's denial of coverage and refusal to defend Para–Marine and its driver and because at no time prior to NAICO's and Para–Marine's complete settle-

ment of all claims did Atlantic Casualty assert this excess position.

The various communications and correspondence between NAICO, its agents or counsel, Para–Marine, its agents or counsel and Atlantic Casualty, its agents or counsel are discussed in the pleadings and are not restated herein. (*See,* Docs. 55, 42, 36, 37). Suffice it to say that Atlantic Casualty did nothing to adjust any of the claims arising from the accident.[3] It was first noticed of the claims in early September, 1993. In an October 27, 1993 letter, counsel, on behalf of Para–Marine, Indian River and Mr. Greene demanded of Atlantic Casualty acknowledgement of coverage and defense on behalf of each. On November 17, 1993, an agent for Atlantic Casualty responded that its policies only insured Indian River and not Para–Marine, that it would share defense costs in the pending suits and that it reserved all rights and policy defenses available to Atlantic Casualty under its policies. (*See* Doc. 37, Exh. M, N). Ultimately, all the lawsuits settled and then Atlantic Casualty offered to and did reimburse Para–Marine for its contributions toward the settlements.

■ Although the express language of Atlantic Casualty's policy would indicate that the coverage on the trailer was excess to the coverage on the tractor, NAICO argues that Atlantic Casualty is precluded from taking that position now. It cites to § 627.426(2), Fla.Stat. (1994) (Florida's "Claims Administration Statute"). This provision precludes a liability carrier from denying coverage based on a coverage defense unless certain specific notice provisions are complied with. Because Atlantic Casualty neither sent a reservation of rights letter within thirty days to anyone and never notified the driver at any time regarding any position on coverage and because it failed to comply with other provisions of this statute, NAICO argues that Atlantic Casualty has waived the excess position and is estopped to assert the defense in this lawsuit.

Atlantic Casualty responds with several arguments. First, it argues that Florida's Claims Administration Statute is inapplicable to this intra-insurer dispute. Since the section cited by NAICO requires notice by an insurance company to its named insured and since neither Para–Marine, nor its driver, were named insureds, the statute simply doesn't apply. Second, it argues that NAICO offers no authority and has no authority for the proposition that it may assume the legal position of a named insured and assert estoppel, even if the statute does apply. Finally, it argues that since the named insured, Indian River, was never sued, the obligations of the statute, even if applicable, never materialized.

NAICO offers no authority to support its argument that the Claims Administration Statute is applicable to disputes between insurers. Under the circumstances of this case and based upon a plain reading of the cited provisions, the court concludes that it does not. For purposes of these motions, neither Para–Marine nor its driver were named insureds under either Atlantic Casualty policy. Section 627.426(2) creates notice requirements as between the company and its named insured. Since neither Para–Marine nor its driver occupied this status, they could not complain of a breach and if they could not complain, NAICO has no conceivable standing to complain in these circumstances. This court concludes that the statute is inapplicable and NAICO may not rely upon its provisions to assert an estoppel argument.

■ For arguments sake, even if NAICO could rely upon these statutory provisions to assert an estoppel argument, they could not thereby create coverage where none existed in the first place.

This court addressed the applicability of § 627.426(2) in *Lazzara Oil Co. v. Columbia Cas. Co.,* 683 F.Supp. 777 (M.D.Fla.1988). In the face of a similar argument, this court

---

**3.** Only Para–Marine and its driver were successfully sued. Indian River was never made a party to any of the lawsuits. The one and only attempt to add Indian River as a party-defendant was denied. NAICO never sought to add them as a party. NAICO adjusted all the claims and along with its counsel, settled all the claims. As noted, Atlantic Casualty did finally offer to split the cost of defense, but as of the time these Motions were filed, had not done so. It does not appear that Atlantic Casualty did anything in the nature of defending Para–Marine or its driver.

cited to a Florida case which held that, "[t]he legislature did not intend, by section 627.426(2), to create coverage under a liability insurance policy that never provided that coverage ..." *United States Fidelity & Guaranty Co. v. American Fire and Indemnity Co.,* 511 So.2d 624, 625 (Fla. 5th DCA 1987). This court reiterated Florida's rule that there was no "coverage defense" issue where there was no insurance relationship at all between the parties, citing to *AIU Insurance Co. v. Block Marina Investment, Inc.,* 512 So.2d 1118, 1119 (Fla. 3rd DCA 1987).

In a subsequent review of this third district decision, the Florida Supreme Court affirmed the position of the fifth district in *USF & G, supra.* "[W]hile the doctrine of estoppel may be used to prevent a forfeiture of insurance coverage, the doctrine may not be used to create or extend coverage." *AIU Insurance Company v. Block Marina Investment, Inc.,* 544 So.2d 998, 1000 (Fla.1989). The court defined "coverage defense" to mean "a defense to coverage that otherwise exists. We do not construe the term to include a disclaimer of liability based on a complete lack of coverage for the loss sustained." *Id.*

■ Atlantic Casualty had no policy relationship with either Para–Marine or its driver. Even if NAICO may step into the shoes of Para–Marine or its driver, there still is no policy relationship with Atlantic Casualty. Under this case law, there is no "coverage defense" issue where there is no coverage. NAICO cannot argue this statute and thereby create an estoppel preventing Atlantic Casualty from asserting its excess over position.

This court held in *Lazzara, supra* that § 627.426 did not apply to an insurance company in an excess coverage policy with no provision requiring a duty to defend. "Section 627.426 addresses 'problems arising from disputes regarding whether, how and under what circumstances and conditions a defense will be provided for an insured pursuant to a defense provision of an insurance contract.'" *Supra* at 782. Where there is

no duty to defend, the statute does not apply. NAICO cites to no provision in Atlantic Casualty's policies requiring it to provide either Para–Marine on Mr. Greene with a defense.[4]

■ The court disagrees with NAICO's view of the significance of either the *AIU* decision or that in *Doe v. Allstate Ins. Co.,* 653 So.2d 371 (Fla.1995). Neither stands for the proposition that policy relationships which do not otherwise exist or that coverage which does not otherwise exist, can be created by a violation of § 627.426(2). *Doe* does keep viable an exception to this rule which states that when the insurer erroneously undertakes the defense of a claim on behalf of one claiming to be an insured and the insured relies to his detriment, the insurer may be equitably estopped to deny the coverage at a later date. However, this exception is inapplicable here. Although Atlantic Casualty offered to pay half of the defense costs, it never undertook to defend the case and indeed never paid its share of the costs. NAICO never shared its investigation with them because of Atlantic Casualty's refusal to acknowledge coverage. Neither *AIU* or *Doe* offers relief to NAICO.

While Atlantic Casualty's claims handling in this instance was non-existent and while Para–Marine may well have been aggrieved by the circumstances, the court cannot ignore clear case law to fashion new remedies which NAICO suggest are necessary for the public betterment. If NAICO truly believes that the Claims Administration Statute should govern intra-insurer disputes, it may seek the necessary amendment by the Florida Legislature to bring this about. Again, as with the argument above, this court cannot ignore existing precedent on the basis of these public policy arguments.

## V.

This court concludes that Atlantic Casualty has not waived and is not estopped to assert its excess over position as against NAICO. Upon the terms of its contract with Indian River, its coverage was excess over other

---

4. While Atlantic Casualty owed a duty to defend Indian River, that company was never made a party to any lawsuit. Under the policy, the duty to defend extended only to "suits" for damages covered by the Coverage Form.

collectible insurance. This coverage status was not altered by the MCS–90 endorsement or Atlantic Casualty's claims practice.

Accordingly, the **Motion of National American Insurance Company for Final Summary Judgment, a Dispositive Motion,** (Doc. 38), is **DENIED.** **Atlantic Casualty and Fire Insurance Company's Motion for Partial Summary Judgment,** (Doc. 43), is **GRANTED.**

**Done and Ordered.**