829 So.2d 980 (2002)
GENERAL SECURITY INSURANCE COMPANY, Appellant,
v.
Bill BARRENTINE d/b/a B Bar B Express, Jimmy F. Jordan, State Farm Insurance Company, and Anita L. Enfinger, Personal Representative of the Estate of Billy Wayne Enfinger, Appellees.
No. 1D01-1698.
District Court of Appeal of Florida, First District.
November 7, 2002.
*981 Bruce P. Anderson of the Law Offices of Bruce P. Anderson, Tallahassee, for Appellant.
No Appearance for Appellees Bill Barrentine, Jimmy F. Jordan, and State Farm Insurance Company.
Samuel W. Bearman, Pensacola for Appellee Anita L. Enfinger.
PADOVANO, J.
This is an appeal from a final declaratory judgment adjudicating the issue of insurance coverage. The trial court held that a truck owned by Bill Barrentine and driven by his employee, Jimmy Jordan, was among the vehicles insured under a commercial lines policy Barrentine had purchased from the General Security Insurance Company. We conclude from the language of the policy that it did not cover the truck or the driver, and that insurance coverage was not otherwise established by an act of the parties or by operation of law. Therefore, we reverse.
The truck in question was not in service at the time the insurance policy was issued and it was not included in the policy as a covered vehicle. Jordan was operating the truck on November 14, 1997, when it collided with an automobile driven by Billy Wayne Enfinger, who died in the collision. Several hours later, Barrentine called his insurance agent, Bill Fralick, and asked him to list the truck along with the other vehicles insured under the policy. Fralick then added the truck to the policy.
Enfinger's wife, Anita, filed a wrongful death suit against Barrentine and Jordan, and General Security subsequently retained an attorney to represent them in the case under a reservation of rights. General Security filed a separate suit for a declaratory judgment to assert its claim that the truck was not covered under the commercial lines policy. The wrongful death suit was stayed pending a resolution of the coverage issue.
The trial court rendered a final judgment in the suit for declaratory relief on March 29, 2001, holding that General Security was obligated to provide coverage. The first two grounds stated in support of the judgment are based on an interpretation of the policy. Relying on a line of cases allowing for a grace period to report changes, the court held that the truck was a covered vehicle and that Jordan was a covered driver. The judgment is also supported by two other grounds, one based on the conduct of the parties and the other based on the operation of federal law. The court reasoned that General Security had violated section 627.426(2), Florida Statutes, when it hired an attorney to represent Barrentine in the wrongful death action without first obtaining Barrentine's permission. A violation such as this precludes the denial of coverage. Finally, the court found that Jordan was on the first leg of an interstate trip when the collision occurred. Based on this finding, the court held that the truck was covered as a matter of law under a federal statute regulating interstate trucking. General Security filed a timely appeal to challenge the declaration that it is obligated to provide coverage.
We conclude that the trial court erred as a matter of law in construing the policy. If the language of an insurance policy is clear, it must be construed to mean what it says and nothing more. See Walker v. State Farm Fire & Cas. Co., 758 So.2d 1161 (Fla. 4th DCA 2000); Alligator Enters., Inc. v. General Agent's Ins. Co., 773 So.2d 94 (Fla. 5th DCA 2000). Courts have no power to create insurance coverage, *982 if it does not otherwise exist by the terms of the policy. See Duncan Auto Realty, Ltd. v. Allstate Ins. Co., 754 So.2d 863 (Fla. 3d DCA 2000). The insurance policy at issue in this case does not afford coverage for the truck or the person who was driving the truck at the time of the collision.
With respect to the truck, the policy states that additional vehicles are covered only if "[y]ou have reported the [vehicle] to us." Furthermore, the signed application for the policy contains the following warning: "NO AUTOMATIC COVERAGE IS AFFORDED UNDER THIS BINDER AND/OR POLICY FOR NEW AND/OR REPLACEMENT VEHICLES." The plain meaning of these statements is that there is no automatic coverage for additional vehicles, but rather that liability coverage is extended only from the time a vehicle has been reported to the insurance company.
Barrentine did not report the truck prior to the collision with Enfinger's car, and therefore did not comply with an applicable condition precedent to a valid claim for insurance coverage for the collision. His failure to comply with the requirements of the policy is fatal to his claim that the truck was insured. See Johnson v. Travelers Indem. Co., 438 So.2d 1045 (Fla. 1st DCA 1983); Reliance Ins. Co. v. D'Amico, 528 So.2d 533 (Fla. 2d DCA 1988). Because an essential condition of the policy was not met, we must hold that coverage did not exist.
The trial court relied on several cases in which the appellate courts have found insurance coverage for after-acquired vehicles, but these cases turn on specific contract provisions not present here. In Rabatie v. U.S. Security Insurance Co., 581 So.2d 1327 (Fla. 3d DCA 1989), for example, the plaintiff purchased a new car and was involved in an accident in the car four days later. The court held that the car was a covered vehicle even though it had not been added before the accident, because the policy contained a thirty-day grace period to provide notice of a new vehicle. See also Silverstein v. Liberty Mutual Insurance Co., 505 F.2d 158 (5th Cir.1974). In contrast, the policy in the present case does not contain a grace period.
The decision in Beasley v. Wolf, 151 So.2d 679 (Fla. 3d DCA 1963) is not controlling, because the policy in that case did not require the insured to report a new vehicle as a condition precedent to insurance coverage. The policy covered any "owned vehicle." The insured had a duty to report a newly acquired vehicle within thirty days, but that requirement related to a recalculation of the premium. It was not clear from the policy whether the failure to report a newly owned vehicle would have any effect on coverage.
As we have explained, the controlling provision of the insurance contract in this case is not ambiguous. According to the policy, Barrentine had a duty to report any additional vehicle to General Security before coverage would be extended for that vehicle. This point is also emphasized in the application, which states that no automatic coverage is afforded under the policy. By its terms, the application became a part of the insurance contract between the parties.
The principles leading to our conclusion that the truck was not a covered vehicle apply, as well, to the issue of coverage for the driver. Jordan was a new driver for Barrentine and he had not been added to the policy at the time of the collision. The applicable part of the policy states:
No coverage will apply to any driver newly placed in service after the policy begins until you report that driver to us and we advise you in writing that he/she *983 is acceptable to us and that he/she is covered under the policy.
Based on the language of this provision, an unlisted driver cannot be covered under the policy. As with the provision relating to covered vehicles, we must give effect to the plain meaning of this provision relating to drivers.
We are also unable to agree that insurance coverage was created by estoppel. The trial court held that General Security could not deny coverage, because it had not complied with section 627.426(2), Florida Statutes (2000). This statute provides in pertinent part that an insurance company shall not be permitted to deny coverage based on a particular coverage defense unless it has retained independent counsel mutually acceptable to the insured. See American Empire Surplus Lines Ins. Co. v. Gold Coast Elevator, Inc., 701 So.2d 904 (Fla. 4th DCA 1997); Continental Ins. Co. v. City of Miami Beach, 521 So.2d 232 (Fla. 3d DCA 1988). The trial court should not have reached the merits of the estoppel issue in this case, however, because it was not properly before the court.
Barrentine did not assert a claim of estoppel under section 627.426(2), Florida Statutes. The estoppel issue was raised by Anita Enfinger on behalf of the estate. General Security objected to Enfinger's argument on the ground that the estate lacked standing to assert the claim. This objection should have been sustained. The conditions imposed by section 627.426(2) apply only to the immediate parties to an insurance contract. See Atlantic Cas. and Fire Ins. Co. v. National Am. Ins. Co., 915 F.Supp. 1218 (M.D.Fla.1996). These conditions are not enforceable by a third party, merely because that party may have an interest in the outcome of a coverage dispute. Enfinger's estate had no legal right to take the place of the named insured and therefore could not insist on compliance with the statute.
The final ground stated in support of the judgment is that coverage was established as a matter of federal law. In support of this holding, the trial court relied on Form MCS-90 which provides, in essence, that the premium paid on a policy to insure a fleet of trucks also covers a truck not specifically listed in the policy if the truck is involved in an accident in the course of an interstate shipment. See 49 U.S.C. § 13906(f); 49 C.F.R. § 387.15. We conclude that the trial court stated the federal law correctly, but that there is no evidence the driver was using the truck in the interstate shipment of goods at the time of the collision.
Form MCS-90 is authorized by the Motor Carrier Act of 1980 and its purpose is to ensure that all interstate trucking companies have adequate insurance for any injury or death caused by their trucks. The form, which is incorporated into the policy in this case, states in pertinent part:
In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.
49 C.F.R. § 387.15 (emphasis added). Form MCS-90 applies only to interstate transportation and does not apply to intrastate transportation. See Branson v. MGA Ins. Co., Inc., 673 So.2d 89 (Fla. 5th *984 DCA 1996); Century Indem. Co. v. Carlson, 133 F.3d 591 (8th Cir.1998).
In the present case, Jordan was traveling in the truck from Graceville, Florida to Southport, Florida to pick up a trailer. He was then to return to Graceville with the trailer and to make a second trip to Southport to pick up another trailer. The trailers would be inspected to discover if any repairs were necessary. If repairs needed to be done, they would last no more than a day and a half. Then, the trailers were to be hauled to Alabama to pick up sod for transport to a destination in Georgia.
The collision occurred while Jordan was on his way to Southport to pick up the first trailer. It is true that the truck was to be used several days later to haul a trailer to Alabama, but that does not make the initial trip from Graceville to Southport an interstate trip. The issue is not whether a truck might be used for an interstate shipment in the future. That much could be said of nearly any tractor-trailer rig. Rather, the issue is whether the injury in question occurred while the truck was operating in interstate commerce. Here, there is little doubt that the collision occurred while Jordan was operating the truck within the state. It follows that the Motor Carrier Act of 1980 does not afford statutory insurance coverage.
For these reasons, we conclude that General Security is not obligated to provide insurance coverage for the loss sustained as a result of the collision. The decision of the trial court is reversed with instructions to render a judgment for General Security.
Reversed.
ALLEN, C.J., and BENTON, J., concur.