[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12972
Non-Argument Calendar

_____

D.C. Docket No. 8:16-cv-02111-CEH-MAP

MARK CHAPMAN,
individually and as personal representative of the Estate of
Gregory Chapman, deceased,
and the Estate of Barbara Chapman, deceased,
IRENE CHAPMAN,

Plaintiffs-Counter
Defendants-Appellants,

KATHY RUFF, et al.,

Plaintiffs-Counter
Defendants,

versus

ACE AMERICAN INSURANCE COMPANY,
a foreign corporation f.k.a. Cigna Insurance Company,

Defendant - Counter
Claimant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 21, 2019)


Before TJOFLAT, JORDAN, and EDMONDSON, Circuit Judges.


PER CURIAM:

In this insurance coverage dispute, Plaintiffs Mark Chapman -- individually and as personal representative of the Estates of Barbara Chapman and of Gregory Chapman -- and Irene Chapman appeal the district court's grant of summary judgment in favor of ACE American Insurance Company ("ACE"). The district court concluded that ACE owed no duty to defend or to indemnify its insured, Robert Taylor, against Plaintiffs' claims in an underlying state court lawsuit (the "Underlying Suit"). No reversible error has been shown; we affirm.

Mark and Barbara Chapman's ten-year old son, Gregory, was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and had a history of behavioral problems, including stealing and a self-inflicted gunshot to the leg. After receiving a referral from the Department of Children and Family Services, the Chapmans

2

engaged Taylor to provide mental health counseling services to Gregory.  Taylor

conducted counseling sessions with Gregory between January and May 1998.  In

May 1998, Gregory committed suicide.

In 1999, Taylor pleaded guilty in state court to four felony counts of

organized fraud and twenty felony counts of grand theft.  Taylor's offense conduct

included, among other things, providing -- and collecting payment for -- unlicensed

counseling services to patients, including Gregory.

Shortly thereafter, Plaintiffs served Taylor with a Notice of Intent to Initiate

Litigation.  Plaintiffs alleged that "Taylor was not a licensed drug abuse or mental

health counselor for minors such as Gregory Chapman."  Plaintiffs also alleged that

Gregory "suffered from mental problems which were aggravated by the treatment

provided by Robert Taylor" and that Taylor's treatment "played a substantial part"

in Gregory's death.

Plaintiffs later filed the Underlying Suit against Taylor and his business,

Recovery Concepts.[1]  Plaintiffs asserted claims for wrongful death, unjust

---

[1] Kathy and William Ruff and their daughter, Melissa LaGotte, were also plaintiffs in the
Underlying Suit.  The Ruffs/LaGotte alleged injuries resulting from Taylor's provision of
unlicensed counseling services to LaGotte.  The Ruffs/LaGotte reached a settlement with ACE and
are not parties to this appeal.

In deciding ACE's motion for summary judgment, the district court limited its analysis to
the Chapmans' claims and said that allegations about LaGotte were not pertinent to whether
coverage existed under the Policy for the Chapmans' claims.  Plaintiffs raise no challenge to that
ruling on appeal.

3

enrichment, unfair and deceptive trade practices, and infliction of severe emotional distress.  Briefly stated, Plaintiffs alleged that Taylor held himself out to the public as a licensed provider of mental health counseling and substance abuse services to minors, when he was neither licensed nor qualified by education and experience to provide such services.  Plaintiffs contend that Taylor's "counseling" contributed to Gregory's death and caused Plaintiffs emotional and financial injury.

At all times pertinent to this appeal, Taylor was insured under an Allied Health Care Provider Professional and Supplemental Policy issued by ACE ("Policy").  ACE refused, however, to defend Taylor against the Underlying Suit. ACE first determined that no coverage existed under the Policy because Plaintiffs' alleged injuries did not arise from covered "professional services."  ACE also determined that coverage was precluded by the Policy's exclusion provisions.

Following mediation, Plaintiffs and Taylor entered into an Agreement to Enter into a Consent Judgment, also known as a Coblentz[2] agreement ("Agreement"). Pursuant to the Agreement, the parties agreed to the entry of a consent judgment in excess of $5 million against Taylor and Recovery Concepts, to be collected from available insurance proceeds.  Taylor also assigned to Plaintiffs his rights under the Policy.  Plaintiffs then filed the instant lawsuit, seeking recovery from ACE.

---

[2] Coblentz v. Am. Sur. Co. of N.Y., 416 F.2d 1059 (5th Cir. 1969).

4

The district court granted summary judgment in favor of ACE.  The district court concluded that ACE owed no duty to defend against Plaintiffs' claims in the Underlying Suit because the acts or omissions alleged by Plaintiffs constituted no "professional services" under the Policy.  The district court also determined that Plaintiffs' allegations fell within the Policy's exclusion provisions.  Because ACE had no duty to defend, the district court determined that ACE owed no duty to indemnify.

We review de novo a district court's grant of summary judgment, applying the same legal standards as the district court.  Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1313 (11th Cir. 1999).  Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law.  Holloman v. Mail-Well Corp., 443 F.3d 832, 836-37 (11th Cir. 2006).

We are bound by the substantive law of Florida in deciding this diversity case. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).  To recover under a Coblentz agreement, "the injured party must bring an action against the insurer and prove coverage, wrongful refusal to defend, and that the settlement was reasonable and made in good faith."  Chomat v. Northern Ins. Co., 919 So. 2d 535, 537 (Fla. Dist. Ct. App. 2006).

5

Under Florida law, an insurer owes a duty to defend its insured "when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." Jones v. Fla. Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 442-43 (Fla. 2005). "Any doubts regarding the duty to defend must be resolved in favor of the insured." Id. at 443. If the alleged facts and legal theories asserted in the complaint fall outside a policy's coverage, no duty to defend arises. See Chicago Title Ins. Co. v. CV Reit, Inc., 588 So. 2d 1075, 1075-76 (Fla. Dist. Ct. App. 1991). Where there exists no duty to defend, an insurer has no duty to indemnify. Wellcare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co., 16 So. 3d 904, 907 (Fla. Dist. Ct. App. 2009).

When an insurance policy's language is "clear and unambiguous," it is construed according to its plain language. Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 33 (Fla. 2000). In other words, "[i]f the language of an insurance policy is clear, it must be construed to mean what it says and nothing more." Gen. Sec. Ins. Co. v. Barrentine, 829 So. 2d 980, 981 (Fla. Dist. Ct. App. 2002). "Courts have no power to create insurance coverage, if it does not otherwise exist by the terms of the policy." Id.

Under the Policy, ACE agreed to "pay all amounts up to the limit of liability, which you become legally obligated to pay as a result of injury or damage to which this insurance applies." The Policy provides that Professional Liability Coverage is

6

available only if the "injury or damage" was "caused by a medical incident arising out of professional services by you . . .." Likewise, Supplemental Liability Coverage is available only for "injury or damage" that "occur[red] in the course of providing your professional services."

The Policy defines the term "Medical Incident" as "any act, error or omission in the providing of or failure to provide professional services by you." The term "Professional Services" "means those services you are licensed, trained, or being trained to provide within the allied health field specified in your application and approved by us for coverage." The Policy identifies Taylor's Professional Occupation as "<u>Drug & Alcohol Abuse Counselor</u>." (emphasis added).

In the Underlying Suit, Plaintiffs made these factual allegations:

10.    At all material times, Taylor held himself out to the public as properly licensed to provide mental health consulting to minors and adults, and family counseling, as required by Florida Statute 491.012(2), when in fact he was not licensed to provide said services.

19a.    Mark and Barbara Chapman were having behavioral problems with their son, Gregory Chapman, which included stealing little items out of Barbara's purse. . . . The Chapmans were . . . told that Taylor could help with Gregory's behavioral problems and had ADHD training and could help treat Gregory's ADHD problems.

36.    Defendant Taylor was not qualified by education, experience or any license issued by the State of Florida to provide mental health counseling to juveniles or adults.

7

In support of their wrongful death claim, Plaintiffs also made these

allegations:

> 43.   Taylor and Concepts breached their duties to the plaintiffs and are strictly liable for such breach, in that they concealed from Gregory Chapman and his parents that Taylor was not competent or licensed to provide mental health counseling to Gregory Chapman.  In addition, at no time through the treatment course of Gregory Chapman did the Defendants refer Gregory Chapman to any qualified mental health provider or otherwise seek a qualified medical opinion as to Gregory Chapman's mental condition and appropriate treatment therefore.
>
> 49.   Defendants breached their duty to the Plaintiffs by failing to refer or suggest referral of Gregory Chapman to a qualified mental health provider.

The amended complaint contained no allegations that Gregory struggled with

substance abuse, that Plaintiffs hired Taylor to provide substance abuse counseling

services for Gregory, or that Taylor provided substance abuse counseling for

Gregory.[3]

---

[3] To the extent the amended complaint contained allegations about substance abuse counseling, we read those allegations as pertaining only to claims asserted by the Ruffs/LaGotte.  We have looked at these words from paragraph 117 of the amended complaint: ". . . Defendants provided Plaintiffs with mental health and substance abuse counseling . . .."

Read in context, paragraph 117 refers plainly only to Taylor's counseling of LaGotte and the Ruffs.  Paragraph 117 fell under the heading "Count VII, Negligence, Plaintiffs Kathy Ruff, William Ruff and Melissa LaGotte."  The first paragraph under Count VII (paragraph 89) says "Plaintiffs, Kathy Ruff, William Ruff and Melissa Lagotte sue Defendants and allege as follows."  Paragraphs 91 through 115 then set forth factual allegations specific to Taylor's conduct in relation to the Ruffs and to LaGotte.  Paragraph 116 alleged that, as mental health and substance abuse counselors, Defendants owed Plaintiffs a duty of care and protection.

Paragraph 117 then reads: "Defendants failed to provide such care and protection to Plaintiffs during such time Defendants provided Plaintiffs with mental health and substance abuse counseling, and therefore, breached their duty of care." (emphasis added).  Paragraphs 118 and

Under Florida law, mental health counseling and substance abuse counseling are treated as distinct professions, governed by different statutes, and licensing and training requirements.  Compare Fla. Stat. § 491.02, et seq. (mental health and family counselors) with § 397.401, et seq. (substance abuse counselors).  In the light of Plaintiffs' allegations in the Underlying Suit, Taylor's complained-of conduct falls clearly outside the Policy's definition of "professional services."  Under the plain language of the Policy, "professional services" means "Drug & Alcohol Abuse Counsel[ing]" services for which Taylor was "licensed, trained, or being trained to provide."  Plaintiffs alleged only that Taylor provided mental health counseling to Gregory: not substance abuse counseling.  Moreover, Plaintiffs' allegations that Taylor lacked the required licensure, education, or experience to provide mental health counseling to Gregory compels a conclusion that Taylor's complained-of counseling services were no "professional services" under the Policy.

Viewing the record in the light most favorable to Plaintiffs, no genuine issue of material fact exists.  Because Plaintiffs have failed to allege facts that "fairly and potentially bring the suit within policy coverage," the district court concluded correctly -- as a matter of Florida law -- that ACE owed no duty to defend or to

119 then alleged that, as a direct and proximate result of Defendants' actions, the Ruffs and LaGotte suffered damages.  Given the surrounding language of the amended complaint, the term "Plaintiffs" in paragraph 117 refers only to the Ruffs and to LaGotte: not the Chapmans.

indemnify Taylor against Plaintiffs' claims in the Underlying Suit.[4]  See Jones, 908

So. 2d at 442-43; Wellcare of Fla., Inc., 16 So. 3d at 906.

AFFIRMED.[5]

---

[4] We reject Plaintiffs' contention that the public policy, legislative intent, or language of Florida's statutes governing substance abuse services (Fla. Stat. § 397 et seq.) give rise to a statutorily-mandated duty to defend in this case.

[5] Because we conclude that ACE owed no duty to defend or to indemnify Taylor, we do not reach the district court's alternative ruling that the Coblentz Agreement was unenforceable because it failed to allocate the damages attributed to the covered and non-covered claims.

10