******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RENEE MARTINEZ *v.* EMPIRE FIRE AND MARINE
INSURANCE COMPANY
(SC 19390)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued November 10, 2015—officially released July 12, 2016*

*Hugh D. Hughes*, with whom, on the brief, was *Vincent R. Falcone*, for the appellant (plaintiff).

*Daniel P. Scapellati*, with whom, on the brief, was *Tracy L. Montalbano*, for the appellee (defendant).

*Margaret A. Little* filed a brief for the New England Legal Foundation as amicus curiae.

*Opinion*

ESPINOSA, J. In this certified appeal, we must determine whether a federally mandated insurance endorsement, known as an MCS-90 endorsement, requires the defendant, Empire Fire and Marine Insurance Company, to pay a judgment in favor of the plaintiff, Renee Martinez,[1] for injuries resulting from a motor vehicle accident. A truck being driven by an employee of the defendant's insured, Tony's Long Wharf Transport, LLC (Tony's), collided with a car being driven by the plaintiff, causing the plaintiff injuries. The plaintiff obtained a judgment against Tony's for negligence, and the judgment remains unpaid. The plaintiff sought to collect the unpaid judgment from the defendant, Tony's insurer, but the defendant denied responsibility under its policy with Tony's. The parties disagree whether the MCS-90 endorsement included in Tony's policy applies only to liability arising during *interstate* transportation, or whether it applies more broadly to liability arising from any accident caused by the negligence of a motor carrier with an MCS-90 endorsement on its policy, even if the accident occurs during an entirely *intrastate* trip. If the endorsement applies only to interstate transportation, the parties also dispute whether the particular trip at issue here was interstate in nature.

We conclude that the MCS-90 endorsement does not apply to the accident at issue because it applies only to liability arising from the transportation of property in interstate commerce, and the accident at issue occurred while Tony's truck was on an intrastate trip entirely within Connecticut.

I

A

Federal law requires certain motor carriers—essentially, companies that transport goods by motor vehicle—to maintain minimum levels of financial responsibility to cover liability arising from the motor carrier's transportation of property in interstate commerce. 49 U.S.C. § 31139; see also 49 C.F.R. § 387.3. Congress authorized the Secretary of Transportation (secretary) to prescribe regulations to carry out this mandate; 49 U.S.C. § 31139 (b); and the implementing regulations can be found at 49 C.F.R § 387.1 et seq. The minimum levels set by the regulations apply to "for-hire motor carriers operating motor vehicles transporting property in interstate . . . commerce." 49 C.F.R. § 387.3 (a); see also id., § 387.1. The amount of financial responsibility motor carriers must maintain varies based on the type of carriage (e.g., for-hire or private) and the type of goods being transported (e.g., hazardous or nonhazardous). Id., § 387.9.

Motor carriers can show compliance with the requirements by, among other methods, including in their liability insurance policies an MCS-90 endorsement in the

form set forth in 49 C.F.R. § 387.15. Id., § 387.7 (b) (1) (ii). The MCS-90 endorsement is essentially a surety obligation that compels an insurer to pay certain judgments against the insured, even if the insurance policy otherwise excludes coverage. *Canal Ins. Co.* v. *Coleman*, 625 F.3d 244, 247 (5th Cir. 2010); *Carolina Casualty Ins. Co.* v. *Yeates*, 584 F.3d 868, 878 (10th Cir. 2009). By its terms, the insurer must "pay, within the [specified] limits of liability . . . any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of [49 U.S.C. § 31139]," and it must do so "regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere." 49 C.F.R. § 387.15, illustration I.

B

The material facts are not in dispute. The defendant issued a commercial insurance policy to Tony's that included an MCS-90 endorsement. Tony's is a towing company based in New Haven that operates in Connecticut and New York. On the date of the accident, Tony's directed one of its employees in New Haven to drive to Hamden to pick up repair parts for its tow trucks from a dealer, and drive them back to its New Haven facility. Tony's intended to use the parts to repair tow trucks that would later be used outside of Connecticut. The employee drove one of Tony's trucks, a wrecker, to travel to the parts dealer. While traveling from New Haven to Hamden, the truck driven by Tony's employee collided with a car driven by the plaintiff, and the plaintiff sustained injuries during the crash. The plaintiff obtained a judgment against Tony's for negligently causing her injuries, but Tony's has not paid the judgment.

The plaintiff brought the present action against the defendant as a judgment creditor pursuant to General Statutes § 38a-321, claiming that Tony's insurance policy issued by the defendant requires the defendant to pay the judgment. Although the policy did not list the truck involved in the accident as a covered vehicle on the date the accident occurred, the plaintiff has claimed that payment is nevertheless due under the MCS-90 endorsement.

The defendant denied that it was responsible for Tony's liability for the accident and moved for summary judgment. The defendant argued that the MCS-90 endorsement applies only to liability arising from the *interstate* transportation of property, and not to any liability for accidents occurring while the motor carrier's vehicle is on a purely *intrastate* trip. Under this interpretation, commonly called a "trip-specific" interpretation, coverage turns on whether the specific trip at issue by the motor carrier was interstate in nature.

According to the defendant, the accident at issue in the present case did not qualify because it occurred during a trip entirely within the state of Connecticut.

The plaintiff objected to the motion. Disagreeing with the defendant's trip-specific approach, the plaintiff urged the trial court to adopt a broader interpretation of when the MCS-90 endorsement applies. The plaintiff argued that the MCS-90 endorsement covers a commercial carrier's liability for *any* accident caused by the motor carrier's negligence, irrespective of whether the particular trip was interstate or not, as long as the carrier had the endorsement on its liability insurance policy at the time of the accident. Alternatively, the plaintiff argued that, even if the MCS-90 endorsement applies only to interstate travel, the accident at issue here qualifies for coverage because it occurred while Tony's truck was en route to pick up parts that would be installed in trucks that would later move across state lines in interstate commerce.

The trial court rendered summary judgment in favor of the defendant. Relying on a case from the United States Court of Appeals for the Second Circuit, *Lyons* v. *Lancer Ins. Co.*, 681 F.3d 50, 57–60 (2d Cir. 2012), cert. denied, U.S. , 133 S. Ct. 1242, 185 L. Ed. 2d 178 (2013), the trial court adopted the defendant's suggested trip-specific interpretation, and concluded that the MCS-90 endorsement applied only to accidents occurring while the motor carrier's vehicle was moving in interstate commerce. Applying the trip-specific interpretation to the undisputed facts, the trial court determined that the MCS-90 endorsement did not apply because Tony's truck was engaging in a purely intrastate trip to pick up repair parts when the accident occurred. According to the trial court, Tony's intention to install those parts into trucks that it intended to later use across state lines did not change the intrastate character of the specific trip at issue. The trial court thereafter rendered judgment in favor of the defendant.

The plaintiff appealed from the judgment of the trial court to the Appellate Court, which affirmed the judgment on an alternative ground.[2] *Martinez* v. *Empire Fire & Marine Ins. Co.*, 151 Conn. App. 213, 216, 226, 94 A.3d 711 (2014). We then granted the plaintiff's petition for certification to appeal.[3] *Martinez* v. *Empire Fire & Marine Ins. Co.*, 314 Conn. 924, 100 A.3d 855 (2014). Because we conclude that the trial court properly applied a trip-specific analysis and that Tony's truck was not operating in interstate commerce at the time of the accident, we affirm the Appellate Court's judgment on that basis and do not address the alternative ground relied upon by the Appellate Court.

II

A trial court's decision on whether to grant a motion for summary judgment presents a question of law, and

our review of that decision is plenary. *Brooks* v. *Sweeney*, 299 Conn. 196, 210, 9 A.3d 347 (2010). Summary judgment is appropriate when the record before the trial court reveals that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Id. The material facts of the present case are undisputed; we therefore must determine whether, on the basis of those facts, the MCS-90 endorsement is inapplicable as a matter of law.

Our analysis proceeds in two parts. We first consider whether the MCS-90 endorsement applies to liability arising out of any accident caused by the negligence of a commercial motor carrier, or only to liability for those accidents occurring while the motor carrier's vehicle is traveling in interstate commerce. Because we conclude that the MCS-90 endorsement applies only to liability for accidents involving vehicles traveling in interstate commerce, we then consider whether the trip at issue in the present case was interstate in nature.

A

The text of the MCS-90 endorsement and its governing statutes and regulations suggest that the MCS-90 endorsement applies only to accidents occurring while the motor carrier's vehicle is traveling in interstate commerce, except in limited circumstances, described later in this opinion, that are not present here. The MCS-90 endorsement requires the insurer to cover liability for a motor carrier's negligence in the operation of its "motor vehicles subject to the financial responsibility requirements of [49 U.S.C. § 31139] . . . ." 49 C.F.R. § 387.15, illustration I. The statute cited by the MCS-90 endorsement, however, does not directly explain which vehicles are subject to its requirements; instead, it commands the secretary to adopt regulations to create financial responsibility requirements that shall apply to liability for "the transportation of property by motor carrier . . . in the United States between a place in a [s]tate and . . . a place in another [s]tate . . . ." 49 U.S.C. § 31139 (b). The regulations provide that they apply generally to "for-hire motor carriers operating motor vehicles transporting property in interstate or foreign commerce." 49 C.F.R. § 387.3 (a). The requirements apply to the *intrastate* transportation of property only when the transported property is hazardous in nature; there is no evidence in the present case that the repair parts were considered to be hazardous under federal law. Id., § 387.3 (b). Given the statutory and regulatory language limiting application of the financial security requirements to the *interstate* transportation of property, with the exception of hazardous materials, it follows that those requirements do not apply to wholly *intrastate* transportation and, consequently, that a motor carrier's vehicle traveling in intrastate commerce is not "subject to the financial security requirements" of 49 U.S.C. § 31139—a necessary condition for coverage

under the MCS-90 endorsement. 49 C.F.R. § 387.15, illustration I. The text thus lends support to the trial court's conclusion that the MCS-90 endorsement applies only when the motor carrier's vehicle involved in the accident is engaging in interstate transportation at the time of the accident.

In considering this question, however, we do not write on a blank slate. The MCS-90 endorsement is a federally mandated insurance endorsement, and thus federal law, not state law, governs its interpretation and application. *National Specialty Ins. Co.* v. *Martin-Vegue*, Fed. Appx. (11th Cir. 2016), Docket No. 14-15811, 2016 WL 737780, *5 (February 25, 2016) ("[f]ederal law controls the interpretation and operation of the MCS-90" endorsement); see also *Canal Ins.* v. *Coleman*, supra, 625 F.3d 247; *Lincoln General Ins. Co.* v. *De La Luz Garcia*, 501 F.3d 436, 441–42 (5th Cir. 2007); *John Deere Ins. Co.* v. *Nueva*, 229 F.3d 853, 856 (9th Cir. 2000), cert. denied, 543 U.S. 1127, 122 S. Ct. 1963, 151 L. Ed. 2d 967 (2002); *Progressive Gulf Ins. Co.* v. *Estate of Jones*, 958 F. Supp. 2d 706, 710 (S.D. Miss. 2013), appeal dismissed, 2013 WL 13-60636 (5th Cir. October 2, 2013); *Pace* v. *Travelers Indemnity Co. of America*, Docket No. 09-7047, 2010 WL 5141252, *2 (E.D. La. December 9, 2010); *Armstrong* v. *United States Fire Ins. Co.*, 606 F. Supp. 2d 794, 820 (E.D. Tenn. 2009); *Canal Ins. Co.* v. *Paul Cox Trucking*, Docket No. 1:05-CV-2194, 2006 WL 2828755, *3 (M.D. Pa. October 2, 2006); *Newman* v. *State Farm Mutual Auto Ins. Co.*, 62 So. 3d 808, 812 (La. App. 2011); *QBE Ins. Co.* v. *P & F Container Services, Inc.*, 362 N.J. Super. 445, 450, 828 A.2d 935 (App. Div. 2003); *Progressive Casualty Ins. Co.* v. *Hoover*, 570 Pa. 423, 435 n.13, 809 A.2d 353 (2002); but see *Heron* v. *Transportation Casualty Ins. Co.*, 274 Va. 534, 539, 650 S.E.2d 699 (2007) (applying state insurance law principles to interpret MCS-90 endorsement).

We therefore look to the decisions of federal courts, in particular to the decisions of the Second Circuit, for guidance in determining how to interpret and apply the MCS-90 endorsement and its governing law. *Szewczyk* v. *Dept. of Social Services*, 275 Conn. 464, 475, 881 A.2d 259 (2005) (explaining well settled principle that "[t]he decisions of the Second Circuit Court of Appeals carry particularly persuasive weight in the interpretation of federal statutes by Connecticut state courts" [internal quotation marks omitted]); see also id., 475–77 nn.11 and 12.

The Second Circuit has embraced the trip-specific interpretation that the motor carrier's vehicle must be operating in interstate commerce at the time of the accident for the endorsement to apply. *Lyons* v. *Lancer Ins. Co.*, supra, 681 F.3d 57–60. The plaintiffs in *Lyons* brought an action against a bus company after one of the company's buses collided with the plaintiffs' vehicle,

causing the plaintiffs to suffer injuries. Id., 51. The bus company was an interstate passenger carrier that operated on both *intra*state and *inter*state routes. Id., 52. On the day of the accident, one of the bus company's drivers was assigned to transport a group of passengers on an interstate trip that traveled through New York and Connecticut. Id., 53–54. The driver missed the dispatch for the intended trip, however, and instead drove his usual route that was entirely within New York. Id., 52, 53–55. The collision with the plaintiffs' vehicle occurred during that trip. Id., 52. The plaintiffs obtained a judgment against the bus company for its negligence, and then brought an action against its insurer, claiming that the bus company's MCS-90B endorsement (the equivalent of the MCS-90 endorsement for passenger carriers)[4] should provide coverage for their injuries. Id., 53. The Second Circuit disagreed, concluding that the MCS-90B endorsement applies only when the "requisite interstate nexus" is satisfied, and in that case, it was not satisfied because the bus was not traveling in interstate commerce when the accident occurred. Id., 58–60. In reaching this conclusion, the Second Circuit looked to the nature of the specific trip at issue and concluded that the bus company's unfulfilled intention for its bus to travel on an interstate route did not establish an interstate nexus because the actual route taken by the bus did not extend beyond New York. Id. Notably, the court also expressly declined to adopt the plaintiffs' alternative interpretation—essentially identical to that offered by the plaintiff in the present case—that the endorsement should apply irrespective of whether the specific trip was *intra*state or *inter*state in nature, purely because the endorsement was attached to the insurance policy. Id., 60–61.

The trip-specific approach used by the Second Circuit in *Lyons* is also used by the solid majority of courts that have spoken to this issue, including every federal appellate court to have considered it. See, e.g., *National Specialty Ins. Co.* v. *Martin-Vegue*, supra,     Fed. Appx.    , 2016 WL 737780, *6 n.9 ("[o]ther courts agree that it is proper to [determine] the MCS-90's applicability with reference to the time of the loss" [internal quotation marks omitted]); *Lyons* v. *Lancer Ins. Co.*, supra, 681 F.3d 57–58 (explaining that Second Circuit and other courts determine whether endorsement applies by looking to nature of specific trip or shipment at issue); *Canal Ins. Co.* v. *Coleman*, supra, 625 F.3d 251 (collecting cases and identifying trip-specific analysis as "the majority approach"); *Pace* v. *Travelers Indemnity Co. of America*, supra, 2010 WL 5141252, *2 (citing *Canal Ins. Co.* v. *Coleman*, supra, 251, and noting that trip-specific analysis is used by majority of courts); *Allstate New Jersey Ins. Co.* v. *Penske Truck Leasing*, supra, 2013 WL 6223381, *4 ("the great weight of authority throughout the country is that the analysis must consider the trip-specific information to determine

whether a vehicle is transporting property in interstate commerce"); 1 W. Schermer & I. Schermer, Automobile Liability Insurance (4th 2015) § 2:15 ("[m]ost courts . . . have held that the MCS-90 . . . does not apply to an accident that occurs during a purely intrastate trip" [footnotes omitted]); see also *Herrod* v. *Wilshire Ins. Co.*, 499 Fed. Appx. 753, 760 (10th Cir. 2012) (applying trip-specific approach to determine whether MCS-90 endorsement covered accident at issue); *Century Indemnity Co.* v. *Carlson*, 133 F.3d 591, 599 (8th Cir. 1998) (same); *Canal Ins. Co.* v. *J. Perchak Trucking, Inc.*, Docket No. 3:CV-07-22722, 2009 WL 959596, *2 (M.D. Pa. 2009) (same); *Brunson* v. *Canal Ins. Co.*, 602 F. Supp. 2d 711, 716–17 (D.S.C. 2007) (same); *Canal Ins. Co.* v. *Paul Cox Trucking*, Docket No. 1:05-CV-2194, 2006 WL 2828755, *4 (M.D. Pa. 2006) (same); *General Security Ins. Co.* v. *Barrentine*, 829 So. 2d 980, 984 (Fla. App. 2002) (same), appeal denied sub nom. *Enfinger* v. *General Security Ins. Co.*, 845 So. 2d 889 (Fla. 2003); *Branson* v. *MGA Ins. Co.*, 673 So. 2d 89, 90–91 (Fla. App.) (same), review denied, 680 So. 2d 421 (Fla. 1996); *Lopez* v. *Manint*, 76 So. 3d 1223, 1227 (La. App. 2011) (same); *Newman* v. *State Farm Mutual Auto Ins. Co.*, supra, 62 So. 3d 811–12 (same); cf. *Canal Ins. Co.* v. *YMV Transport, Inc.*, 867 F. Supp. 2d 1099, 1106–1109 (W.D. Wn. 2011) (declining to use trip-specific approach to determine whether motor carrier was operating "for-hire," but noting that majority of courts to consider this issue use trip-specific analysis to hold that MCS-90 endorsement applies only when vehicle at issue is moving in interstate commerce at time of accident).

In support of a broader interpretation, the plaintiff cites three cases that have held that the MCS-90 endorsement applies also to accidents occurring on purely intrastate trips, but we find these cases to be less persuasive. In two of the cases cited by the plaintiff, a federal District Court concluded that the MCS-90 endorsement applied to solely intrastate travel, but its respective Circuit Court of Appeals later rejected that interpretation. Compare *Travelers Indemnity Co. of Illinois* v. *Western American Specialized Transportation Services, Inc.*, 235 F. Supp. 2d 522, 527–30 (W.D. La. 2002), and *Reliance National Ins. Co.* v. *Royal Indemnity Co.*, Docket No. 99 Civ. 10920 (NRB), 2001 WL 984737, *5–7 (S.D.N.Y. August 24, 2001), with *Canal Ins. Co.* v. *Coleman*, supra, 625 F.3d 251, and *Lyons* v. *Lancer Ins. Co.*, supra, 681 F.3d 58. The plaintiff also cites a state court decision in support of her interpretation, *Heron* v. *Transportation Casualty Ins. Co.*, supra, 274 Va. 539–40, but that court applied state insurance and contract law principles to interpret and apply the MCS-90 endorsement, an approach we believe is unsound given that, as explained previously, federal law, not state law, governs its interpretation and application.[5] See, e.g., *National Specialty Ins. Co.* v. *Martin-Vegue*, supra,     Fed. Appx.    , 2016 WL 737780, *5;

*Canal Ins. Co.* v. *Coleman*, supra, 247; *John Deere Ins. Co.* v. *Nueva*, supra, 229 F.3d 856. Nothing in these cases cited by the plaintiff convinces us to depart from the trip-specific approach used by the Second Circuit.

We are persuaded to follow the "trip-specific" interpretation used by the Second Circuit in *Lyons*. It is consistent with the text of the MCS-90 endorsement and the statute and regulations governing that endorsement, and has been embraced by a majority of courts to consider the question.

More importantly, however, even if we disagreed with the Second Circuit's approach and were inclined to adopt the plaintiff's contrary interpretation, we would nevertheless be constrained by principles of comity and consistency to follow the Second Circuit on this issue. When addressing questions of federal law, we give special consideration to the decisions of the Second Circuit. *Szewczyk* v. *Dept. of Social Services*, supra, 275 Conn. 475–77 nn.10–12 (collecting cases delineating our deference to federal courts, particularly Second Circuit decisions, on questions of federal law). This consideration is especially strong when, as in the present case, the issue involves the interpretation of federal statutes and regulations, this court has not previously addressed the issue, and adopting a different interpretation would likely alter the outcome of the case. Id., 477 n.12 ("[a]ny disagreement by us with the Second Circuit's statutory analysis must yield to the more compelling objective of uniform interpretation of federal laws, particularly when the federal court has spoken first" [emphasis omitted]).

Deferring to the Second Circuit in these circumstances promotes consistency in the application of federal law in this jurisdiction. Id., 475 n.11. It would be strange indeed for federal statutes and regulations to apply differently, and potentially change the outcome of a case, based solely on which courthouse in Connecticut, state or federal, the plaintiff chooses for filing the action. Id., citing *Red Maple Properties* v. *Zoning Commission*, 222 Conn. 730, 739 n.7, 610 A.2d 1238 (1992). Adopting a different interpretation in the present case would create confusion about how federal law applies to motor carriers and insurers in this state and would potentially encourage forum shopping. See *Szewczyk* v. *Dept. of Social Services*, supra, 275 Conn. 475 n.11 ("[d]eparture from Second Circuit precedent on issues of federal law, however, should be constrained in order to prevent the plaintiff's decision to file an action in federal District Court rather than a state court located a few blocks away from having the bizarre consequence of being outcome determinative" [internal quotation marks omitted]). Although the plaintiff's suggested interpretation of the MCS-90 endorsement might be simpler to apply, and could potentially bring relief to a greater number of persons injured in accidents on the

highway (albeit at the expense of motor carriers and their insurers), we are not at liberty to disregard the approach adopted by the Second Circuit.

Additionally, we observe that, although the "trip-specific" interpretation limits the application of federally mandated insurance coverage to trips that are interstate in nature, the states nevertheless remain free to create their own regulations governing insurance requirements for motor carrier transportation within their state borders. See, e.g., T. Hershewe, "Hiding in Plain Sight," 51 Trial 46, 48–49 (February 2015). In fact, Connecticut has adopted regulations that generally mirror the federal regulations and that apply to motor carriers engaging in intrastate travel. See Regs., Conn. State Agencies § 14-163c-1 et seq. Connecticut's regulations impose more stringent requirements for triggering coverage requirements than the federal regulations, and neither party has argued that Connecticut's regulations apply in the present case. See id.; see also 2 M. Leizerman, Litigating Truck Accident Cases (2015) § 16:8, pp. 523–24 (summarizing Connecticut's regulations that roughly parallel federal motor carrier regulations). If policy considerations dictate that insurance mandates for motor carriers should be extended to intrastate travel, that extension must come from state agencies and the legislature, not through an expansion by this court of the meaning of federal law.

We therefore conclude that the MCS-90 endorsement covers liability for a motor carrier's negligence only when the liability arises while the motor carrier's vehicle involved in the accident is engaged in the transportation of property in interstate commerce at the time the accident occurs. See 49 C.F.R. § 387.3.

B

We next consider whether the truck at issue was transporting property in interstate commerce when the accident occurred. The parties do not dispute that the accident occurred during a trip within Connecticut. Nevertheless, the plaintiff argues that the trip should be considered as interstate transportation because it was one leg of a broader interstate movement of goods, in this case, the movement of the repair parts that Tony's truck was en route to pick up when the accident occurred. According to the plaintiff: Tony's truck was traveling to Hamden to pick up the repair parts at the time of the accident; those repair parts were to be installed into Tony's tow trucks; and Tony's intended to use those tow trucks at a later date to cross state lines as part of its towing business. The plaintiff contends, therefore, that the travel to Hamden to pick up the repair parts was the first leg of a continuous interstate journey for the repair parts.[6] The defendant disagrees and argues that, for purposes of applying the MCS-90 endorsement, any later movement of the repair parts after their installation into other vehicles must be con-

sidered a separate trip from the one at issue in the present case. We agree with the defendant.

As with the first question, federal law concerning motor carriers controls our analysis. *National Specialty Ins. Co.* v. *Martin-Vegue*, supra,     Fed. Appx.    , 2016 WL 737780, *5; *Canal Ins. Co.* v. *Coleman*, supra, 625 F.3d 247. Because "[t]here is no single concept of interstate commerce [that] can be applied to every federal statute regulating interstate commerce," the test for determining whether an activity qualifies as "interstate commerce" depends on the activity and federal regulatory scheme at issue. (Internal quotation marks omitted.) *Progressive Casualty Ins. Co.* v. *Hoover*, supra, 570 Pa. 435 n.12, quoting *McLeod* v. *Threlkeld*, 319 U.S. 491, 495, 63 S. Ct. 1248, 87 L. Ed. 1538 (1943). Courts interpreting and applying federal statutes and regulations governing motor carriers, including those relating to the MCS-90 endorsement, have developed a niche body of law aimed at determining whether a particular route or trip by a motor carrier is interstate in nature.[7] See, e.g., *Bilyou* v. *Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 223 (2d Cir. 2002); *Roberts* v. *Levine*, 921 F.2d 804, 812 (8th Cir. 1990); *Progressive Casualty Ins. Co.* v. *Hoover*, supra, 435–36. We therefore look to cases addressing this question for guidance.

In the context of motor carrier transportation, courts have consistently held that a trip within only one state may nevertheless be considered interstate in nature if the trip is one leg of a continuous interstate movement of goods. See, e.g., *Bilyou* v. *Dutchess Beer Distributors, Inc.*, supra, 300 F.3d 223; *Roberts* v. *Levine*, supra, 921 F.2d 812. To be considered part of an interstate trip, "the goods being transported within the borders of one [s]tate [must be] involved in a 'practical continuity of movement' in the flow of interstate commerce." *Bilyou* v. *Dutchess Beer Distributors, Inc.*, supra, 223. To determine whether the goods are part of a practical continuity of movement, courts look to the intent of the shipper and the circumstances surrounding the shipment. Id.; *Roberts* v. *Levine*, supra, 812; *Progressive Casualty Ins. Co.* v. *Hoover*, supra, 570 Pa. 435–36. Circumstances indicative of continuous movement include "uninterrupted movement; continuous possession by the carrier; unbroken bulk; and [the] absence of processing or substantial product modification." *Progressive Casualty Ins. Co.* v. *Hoover*, supra, 435–36, citing *Texas* v. *United States*, 866 F.2d 1546, 1556 (5th Cir. 1989). In light of these considerations, courts agree that a brief pause in the movement of goods or minor processing of those goods generally will not mark the beginning of a new trip for the purposes of motor carrier regulations, while substantial modification or processing of the goods generally will. See, e.g., *Roberts* v. *Levine*, supra, 816 ("[t]he creation of an article of commerce, as distinct from the packaging, bailing and the like of an existing one, will generally be a terminus

of transportation" [internal quotation marks omitted]); see also *Progressive Casualty Ins. Co.* v. *Hoover*, supra, 436. Indicia of substantial processing and modification include subjecting a good to a process that "materially change[s] [its] character, utility, and value." (Internal quotation marks omitted.) *Roberts* v. *Levine*, supra, 816.

Applying these principles to the present case, we conclude that the trip at issue was not interstate in nature. When the accident occurred, Tony's truck was traveling between New Haven and Hamden on a route entirely within Connecticut. We are not persuaded by the plaintiff's argument that the trip at issue was part of a larger interstate movement. Any later movement of the repair parts after their installation into tow trucks would be part of a new and distinct trip. The intended installation of the repair parts into other trucks would substantially alter the " 'character, utility, and value' "; id.; of the repair parts. Once installed, the repair parts would, for all practical purposes, no longer be considered individual parts, but would become an integral part of another commodity—Tony's tow trucks. We therefore view any later movement of the repair parts across state lines after integration into Tony's tow trucks to be a wholly new journey for the purposes of the motor carrier regulations—one simply too attenuated from the original journey to be considered part of a "practical continuity of movement . . . ." (Internal quotation marks omitted.) *Bilyou* v. *Dutchess Beer Distributors, Inc.*, supra, 300 F.3d 223; see, e.g., *Progressive Gulf Ins. Co.* v. *Estate of Jones*, supra, 958 F. Supp. 2d 717 (installation of parts into mobile home created new commodity and terminated parts' original journey); see also *Roberts* v. *Levine*, supra, 921 F.2d 815 ("[the] manufacture of an item interrupts the stream of commerce so that after manufacture there is a new commercial journey, either inter[state] or intrastate"); *General Security Ins. Co.* v. *Barrentine*, supra, 829 So. 2d 984 (possibility that truck "might be used for an interstate shipment in the future" not enough to trigger coverage under MCS-90 endorsement for accident occurring during earlier trip).

Accordingly, for the purposes of applying the MCS-90 endorsement, we conclude that the relevant trip began in New Haven when Tony's employee, operating Tony's truck, embarked on his journey to Hamden to retrieve the repair parts. The trip was to terminate when the employee returned in Tony's truck with the parts to Tony's place of business in New Haven. Because the route of this trip was entirely within Connecticut, we conclude it does not qualify as the transportation of property in interstate commerce. See 49 C.F.R. § 387.3. Consequently, we conclude that the truck at issue was not "subject to the financial responsibility requirements" at the time of the accident as required by the MCS-90 endorsement; id., § 387.15, illustration I; and that the MCS-90 endorsement therefore does not pro-

vide coverage for the accident at issue. The Appellate Court properly affirmed the trial court's judgment granting the defendant's motion for summary judgment.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and PALMER, ZARELLA, McDONALD and ROBINSON, Js., concurred.

[1] Universal Donuts, Inc., the plaintiff's employer, joined the litigation as an intervening plaintiff but is not a party to this appeal.

[2] The Appellate Court did not address the interstate commerce issues. *Martinez* v. *Empire Fire & Marine Ins. Co.*, 151 Conn. App. 213, 226, 94 A.3d 711 (2014). It instead determined that the MCS-90 endorsement applied only when the motor carrier's vehicle was being operated "for-hire" at the time of the accident, and that Tony's truck was not being operated "for-hire" at the time of the accident because it was being used by one of Tony's employees to transport Tony's own property, not that of a customer. Id., 224–25.

[3] We granted the plaintiff's petition for certification to appeal limited to the following questions: (1) whether the Appellate Court properly affirmed the judgment of the trial court on the basis of the Appellate Court's conclusion that at the time of the accident, Tony's was not operating its vehicle for-hire; and (2) whether the trial court properly found that at the time of the accident, the vehicle operated by Tony's was not engaged in interstate commerce.

Both certified questions contained misstatements and have been rephrased. See *State* v. *Dort*, 315 Conn. 151, 169, 106 A.3d 277 (2014). The certification order originally stated that certification was granted limited to the following questions: "1. Did the Appellate Court properly affirm the judgment of the trial court based upon the trial court's finding that, at the time of the accident giving rise to the plaintiff's personal injury suit against [Tony's], Tony's was not operating its vehicle 'for-hire?' "; and "2. Did the Appellate Court properly find that, at the time of the accident giving rise to the plaintiff's personal injury suit against Tony's, the vehicle operated by Tony's was not engaged in interstate commerce?" *Martinez* v. *Empire Fire & Marine Ins. Co.*, 314 Conn. 924, 924–25, 100 A.3d 855 (2014).

As certified, the first question incorrectly suggested that the trial court found that Tony's vehicle was not operating "for-hire" at the time of the accident. The record reveals that the trial court made the opposite finding. The second question incorrectly suggested that the Appellate Court reached the question of whether Tony's vehicle was engaged in interstate commerce at the time of the accident, a question that the Appellate Court expressly declined to address. See *Martinez* v. *Empire Fire & Marine Ins. Co.*, supra, 151 Conn. App. 226. The parties' briefs reflect that they were not misled by these misstatements in the certified questions.

[4] The MCS-90B endorsement and its governing regulatory scheme "parallels" that of the MCS-90 endorsement, so cases interpreting and applying one control the interpretation and application of the other. See, e.g., *Lyons* v. *Lancer Ins. Co.*, supra, 681 F.3d 57–58 (relying on cases interpreting MCS-90 endorsement to determine how to apply MCS-90B endorsement); *Canal Ins. Co.* v. *Coleman*, supra, 625 F.3d 249 n.7 ("[w]e have previously determined that MCS-90B cases control our interpretation of the MCS-90"); *Canal Indemnity Co.* v. *Galindo*, 344 Fed. Appx. 909, 911 (5th Cir. 2009) ("Although the two statutes and the endorsements admittedly govern different types of transportation, they are otherwise indistinguishable in form and language. . . . By using identical language in the two statutes to apply liability to passengers and to property, Congress gave the statutes an identical reach." [Citations omitted.]).

[5] Relying on state insurance and contract law principles to interpret and apply the MCS-90 endorsement is inconsistent with the nature of that endorsement. The MCS-90 endorsement is not merely a private insurance contract, but a federally mandated obligation. Federal law, not state law, dictates the content of the endorsement, and the states and the parties to the endorsement are not free to depart from the precise form set out in the federal regulations. See, e.g., *Lincoln General Ins. Co.* v. *De La Luz Garcia*, supra, 501 F.3d 441–42; see also 49 C.F.R. § 387.15.

[6] The record does not indicate whether the repair parts that Tony's intended to purchase had moved in interstate commerce prior to reaching the parts dealer in Hamden, and the plaintiff has not based her interstate commerce argument on any claim that the parts moved in interstate com-

merce prior to arriving at the dealer in Hamden.

[7] It bears noting that courts do not regard the concept of "interstate commerce" in the context of federal motor carrier regulation as being coextensive with Congress' powers under the federal commerce clause. U.S. Const., art. I, § 8, cl. 3; see, e.g., *Southern Pacific Transportation Co.* v. *Interstate Commerce Commission*, 565 F.2d 615, 617 (9th Cir. 1977); *Reliance National Ins. Co.* v. *Royal Indemnity Co.*, supra, 2001 WL 984737, *4; see also *Progressive Casualty Ins. Co.* v. *Hoover*, supra, 570 Pa. 435 n.12. Thus, whether a motor carrier's activity is interstate in nature for the purposes of applying the MCS-90 endorsement poses a different question than whether the same activity falls within Congress' power under the commerce clause. See, e.g., *Progressive Casualty Ins. Co.* v. *Hoover*, supra, 435 n.12.