ROBINSON, J.
**200 This certified appeal presents a question of first impression to this court, namely, whether we should apply the federal courts' modified categorical analysis to determine whether a Connecticut criminal statute, which lists potential offense elements in the alternative, carries the adverse immigration consequences attendant to a crime of moral turpitude as defined in 8 U.S.C. § 1101 (a) (13) (C) (v) of the Immigration and Nationality Act (immigration act), 8 U.S.C. § 1101 et seq.[1] The *1147 petitioner, Jean St. Juste, appeals, **201 upon our grant of his petition for certification,[2] from the judgment of the Appellate Court dismissing, as moot, his appeal from the judgment of the habeas court, which had denied his amended petition for a writ of habeas corpus challenging a conviction of assault in the second degree in violation of General Statutes § 53a-60 (a) (2). St. Juste v. Commissioner of Correction , 155 Conn. App. 164, 165-66, 109 A.3d 523 (2015). In its decision, the Appellate Court agreed with the respondent, the Commissioner of Correction (commissioner), and concluded that the habeas appeal was rendered moot by the petitioner's subsequent deportation to Haiti because any relief that could be provided in relation to the petitioner's assault conviction would have no effect on his ability to lawfully reenter this country or to become a citizen. Id., at 181, 109 A.3d 523. Specifically, the Appellate Court concluded that a prior unchallenged conviction of threatening in the second degree in violation of General Statutes (Rev. to 2005) § 53a-62 (a),[3] which the Appellate Court **202 concluded constituted a crime of moral turpitude under the immigration act, would remain as an impediment to the petitioner's reentry. Id. Following case law from the United States Court of Appeals for the Second Circuit, we conclude that § 53a-62 (a) is a divisible statute because it lists potential offense elements in the alternative, not all of which constitute crimes of moral turpitude as a matter of federal law. Applying a modified categorical approach to this divisible statute, because the record does not establish the subdivision of § 53a-62 (a) under which the petitioner was convicted, we further conclude that the Appellate Court improperly *1148 determined that the petitioner's threatening conviction constituted a crime of moral turpitude that rendered moot his habeas appeal challenging his assault conviction. Accordingly, we reverse the judgment of the Appellate Court.
The opinion of the Appellate Court sets forth the relevant facts and procedural history. "On July 26, 2010, the petitioner filed an amended petition for a writ of habeas corpus in which he alleged that, on December 17, 2007, he pleaded guilty to assault in the second degree in violation of ... § 53a-60 (a) (2), and guilty under the Alford doctrine[4] to possession of a sawed-off shotgun in violation of General Statutes § 53a-211. He was represented by Attorney Howard Ignal. On January **203 28, 2008, he was sentenced pursuant to a plea agreement to a total effective sentence of five years incarceration, execution suspended after eighteen months, followed by five years of probation. On July 27, 2009, the petitioner, represented by Attorney Anthony Collins, filed a motion to withdraw his guilty pleas on the ground that at the time he entered them, he did not understand their immigration consequences. On November 17, 2009, the [trial] court denied the motion.
"In his two count amended petition, the petitioner alleged that Ignal rendered ineffective assistance of counsel because, among other deficiencies, he (1) failed to educate himself about the immigration consequences of the pleas, (2) misadvised the petitioner with respect to the immigration consequences of the pleas, and (3) failed to meaningfully discuss with the petitioner what immigration consequences could ... flow from the pleas. The petitioner alleged that Ignal's representation was below that displayed by attorneys with ordinary training and skill in ... criminal law, and that but for such representation, he would not have pleaded guilty and he would have resolved the case in a way that would not result in 'deportation consequences.' In the second count of his petition, the petitioner alleged that his pleas were not knowingly, voluntarily, and intelligently made because he made them under the mistaken belief that his conviction would not subject him to deportation. The petitioner alleged that '[a]s a result of his conviction, [he] has been ordered removed from this country by an immigration judge, and the judge's order has been affirmed by the Board of Immigration Appeals.' Additionally, the petitioner alleged that '[t]he basis for the removal order was the conviction [of] assault in the second degree and possession of a sawed-off shotgun.'[5]
**204 "Following an evidentiary hearing, the habeas court orally rendered its decision denying the petition.[6] In relevant part, the court stated that it accepted as true the testimony of the petitioner's trial attorney, Ignal. The court stated: '[Ignal] clearly saw all of the problems with this case, and they all spelled the word "immigration." From day one, I think, he was *1149 alerted to this and did everything he could, from what I can see, to try to avert the ultimate result.' The court found that Ignal was well aware of the adverse consequences of the pleas insofar as they involved deportation, and that he had thoroughly discussed that issue with the petitioner. The court rejected the claim of ineffective assistance of counsel. Later, the court granted the petitioner's petition for certification to appeal." (Footnotes added and omitted.) Id., at 166-67, 109 A.3d 523. Following the habeas court's decision, in accordance with the September 2, 2009 decision of the United States Immigration Court (immigration court), the petitioner was deported to Haiti on April 15, 2011.[7] Id., at 169, 109 A.3d 523.
The petitioner appealed to the Appellate Court on May 4, 2011, claiming that the judgment of the habeas court "should be overturned because, pursuant to Padilla v. Kentucky , 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed. 2d 284 (2010), [Ignal's performance] was deficient **205 in that he failed to advise him, prior to entering the plea agreement, 'that his [assault] conviction would make him subject to automatic deportation.' " St. Juste v. Commissioner of Correction , supra, 155 Conn. App. at 167-68, 109 A.3d 523. The Appellate Court did not, however, reach the merits of the petitioner's ineffective assistance of counsel claim because it concluded that the appeal should be dismissed as moot. Id., at 181, 109 A.3d 523. The Appellate Court cited State v. Aquino , 279 Conn. 293, 901 A.2d 1194 (2006), and Quiroga v. Commissioner of Correction , 149 Conn. App. 168, 87 A.3d 1171, cert. denied, 311 Conn. 950, 91 A.3d 462 (2014), for the proposition that a court cannot grant practical relief unless there is evidence that the challenged decision is the exclusive basis for the deportation. St. Juste v. Commissioner of Correction , supra, at 172, 109 A.3d 523. These circumstances led the Appellate Court "to a consideration of whether, in accordance with the analysis in Aquino and Quiroga , there is any evidence in the record to suggest that, in the absence of the guilty plea to the assault charge, the petitioner would be allowed to reenter this country or become a citizen." Id., at 174, 109 A.3d 523.
The Appellate Court observed that the "record reflects, and the petitioner does not dispute, that at the time that he was alleged to have committed the offenses for which he pleaded guilty-assault in the second degree and possession of a sawed-off shotgun-he was serving a period of probation resulting from an earlier conviction [of] threatening in the second degree in violation of ... § 53a-62. Neither the record nor the parties have shed light on the subdivision of the statute under which the petitioner was convicted. As a result of the threatening conviction, the petitioner was sentenced to a suspended term of imprisonment of eleven months, with two years of probation. The record does not divulge facts concerning the threatening conviction. The parties, however, are in agreement that the petitioner's **206 conviction *1150 resulted from a guilty plea, and that the incident underlying the offense occurred in 2006, when the petitioner was eighteen years of age." Id.
The Appellate Court then agreed with the commissioner's argument that the defendant's conviction of threatening in the second degree constituted a crime of moral turpitude under provisions of the immigration act "that bar aliens from lawful readmission to the United States following their conviction of a crime involving moral turpitude. See 8 U.S.C. § 1182 (a) (2) (A) (i) (l) [2012] (unless statutory exception applies, aliens seeking readmission into United States are ineligible for visas or admission if they have been convicted of crimes involving moral turpitude); 8 U.S.C. § 1101 (a) (13) (C) (v) [2012] (aliens who have committed crimes of moral turpitude and attempt to reenter United States are deemed aliens seeking readmission)."[8] (Footnote omitted.) St. Juste v. Commissioner of Correction , supra, 155 Conn. App. at 174-75, 109 A.3d 523. Applying a categorical analysis employed by the Second Circuit in Dalton v. Ashcroft , 257 F.3d 200, 204 (2d Cir. 2001),[9] the Appellate Court explained that all three applicable subdivisions of the threatening in the second degree statute necessarily **207 involve "the type of conduct and mental state that is characteristic of crimes involving moral turpitude." St. Juste v. Commissioner of Correction , supra, at 181, 109 A.3d 523. Specifically, the Appellate Court relied on the definition of the term "threat" in our decision in State v. Cook , 287 Conn. 237, 257 n.14, 947 A.2d 307, cert. denied, 555 U.S. 970, 129 S.Ct. 464, 172 L.Ed. 2d 328 (2008), and federal case law from the United States Courts of Appeals for the First, Fifth, Eighth, and Ninth Circuits holding that intent and recklessness are mental states that would support a conclusion that a crime is one of moral turpitude. St. Juste v. Commissioner of Correction , supra, at 179-80, 109 A.3d 523. The Appellate Court concluded, therefore, that the guilty plea underlying the petitioner's conviction of assault in the second degree was not the only impediment to his reentry into the United States. Id., at 181, 109 A.3d 523. Accordingly, the Appellate Court rendered judgment dismissing the petitioner's appeal as moot "because any relief we could afford him in connection with the assault conviction underlying his petition for a writ of habeas corpus would not have any effect on his ability lawfully to reenter this country or to become a citizen." Id. This certified appeal followed. See footnote 2 of this opinion.
On appeal to this court, the petitioner claims that the Appellate Court improperly concluded that threatening in the second degree constitutes a crime of moral *1151 turpitude. Specifically, the petitioner contends that, because the statute underlying that offense is divisible, the Appellate Court should have applied the modified categorical approach to determine the particular subdivision of § 53a-62 (a) under which the petitioner pleaded guilty. Applying the modified categorical approach, the petitioner argues that the record demonstrates that he pleaded guilty to threatening in the second degree under § 53a-62 (a) (3), which is not a crime of moral turpitude because it requires proof of recklessness, and not § 53a-62 (a) (1), which requires proof of intent. **208 In response, the commissioner argues that the Appellate Court properly applied the categorical approach to determine that threatening in the second degree in violation of § 53a-62 (a) constitutes a crime of moral turpitude under any of the statute's three subdivisions. Alternatively, the commissioner argues that, even under the modified categorical approach, the petitioner's threatening conviction constituted a crime of moral turpitude because that approach, properly applied, identifies § 53a-62 (a) (1), which requires an intentional mental state, as the subdivision underlying the petitioner's conviction. We, however, agree with the petitioner and conclude that § 53a-62 (a) is divisible, with offenses requiring recklessness under subdivision (3) not presenting crimes of moral turpitude under Second Circuit case law. Applying the modified categorical approach to the record before us, we are unable to ascertain which subdivision of § 53a-62 (a) formed the basis of the petitioner's conviction. Because we cannot determine from the record whether the petitioner's conviction under that statute constitutes a crime of moral turpitude, we conclude that the Appellate Court improperly dismissed the habeas appeal as moot insofar as the petitioner's challenged assault conviction gives rise to a reasonable possibility of prejudicial collateral consequences.
It is well settled that "[a] case is considered moot if [the] court cannot grant the [litigant] any practical relief through its disposition of the merits .... Under such circumstances, the court would merely be rendering an advisory opinion, instead of adjudicating an actual, justiciable controversy .... Because mootness implicates the court's subject matter jurisdiction, it raises a question of law subject to plenary review." (Citations omitted; internal quotation marks omitted.) State v. Jerzy G. , 326 Conn. 206, 213, 162 A.3d 692 (2017).
**209 The collateral consequences doctrine is an exception to the traditional direct injury requirement of mootness. Specifically, "[w]e have determined that a controversy continues to exist ... if the actual injury suffered by the litigant potentially gives rise to a collateral injury from which the court can grant relief." State v. McElveen , 261 Conn. 198, 205, 802 A.2d 74 (2002) ; see also State v. Jerzy G. , supra, 326 Conn. at 213-14, 162 A.3d 692. "[F]or a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur." State v. McElveen , supra, at 208, 802 A.2d 74.
We recently considered the application of the collateral consequences doctrine in the context of immigration in State v. Jerzy G. , supra, 326 Conn. at 223, 162 A.3d 692, which held that a conviction that was not the sole reason for a petitioner's deportation nevertheless could have given rise to prejudicial collateral consequences that negatively affected the petitioner's ability to lawfully reenter the country or to *1152 become a citizen.[10] Explaining State v. Aquino , supra, 279 Conn. at 293, 901 A.2d 1194, this court observed that "courts have held that when a conviction, other than the one being challenged, results in a deportee's permanent ban from reentering this country, the deportee cannot establish collateral injury even if the challenged conviction also is an impediment to reentry." (Emphasis in original.) State v. Jerzy G. , supra, at 221, 162 A.3d 692 ; see also id., at 222-23, 162 A.3d 692 (rejecting cases, such as Quiroga v. Commissioner of Correction , supra, 149 Conn. App. at 168, 87 A.3d 1171, that read Aquino as standing for proposition that court cannot grant practical relief unless there is evidence that challenged decision is exclusive basis for **210 deportation). Therefore, in the present appeal, we must determine whether the petitioner's unchallenged conviction of threatening in the second degree is a crime of moral turpitude that would permanently bar his reentry into the United States or impede his ability to become a citizen.
At the outset, we note that the question of whether the petitioner's conviction of threatening in the second degree constitutes a crime of moral turpitude under the immigration act presents an issue of first impression for Connecticut's courts. In considering this question, which is determinative of the question of mootness in the present appeal, "we note that it is well settled that decisions of the Second Circuit, while not binding upon this court, nevertheless carry particularly persuasive weight in the resolution of issues of federal law ...." (Internal quotation marks omitted.) Dayner v. Archdiocese of Hartford , 301 Conn. 759, 783, 23 A.3d 1192 (2011) ; see also Martinez v. Empire Fire & Marine Ins. Co. , 322 Conn. 47, 62, 139 A.3d 611 (2016) ("principles of comity and consistency" constrain us "to follow the Second Circuit" in addressing questions of federal law).
The Board of Immigration Appeals has defined a crime of moral turpitude as "conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." Rodriguez v. Gonzales , 451 F.3d 60, 63 (2d Cir. 2006). The Second Circuit has explained that, "[i]n determining whether a crime is a crime involving moral turpitude, we apply either a categorical or a modified categorical approach. Under the categorical approach, we look only to the minimum criminal conduct necessary to satisfy the essential elements of the crime, not the particular circumstances of the defendant's conduct .... When the criminal statute at issue encompasses some classes of criminal acts that fall within the **211 federal definition of [moral turpitude] and some classes that do not fall within the definition, the statute is considered divisible .... If a statute is divisible a court, proceeding under the modified categorical approach, may refer to the record of conviction to determine whether a petitioner's conviction was under the branch of the statute that proscribes removable offenses." (Citations omitted; internal quotation marks omitted.) Mendez v. Mukasey , 547 F.3d 345, 348 (2d Cir. 2008) ; see also Akinsade v. Holder , 678 F.3d 138, 144 (2d Cir. 2012) ("where a statute is divisible, such that some categories of proscribed conduct render an alien removable *1153 and some do not, application of a modified categorical approach is appropriate" [internal quotation marks omitted] ); Wala v. Mukasey , 511 F.3d 102, 107 (2d Cir. 2007) (applying modified categorical approach to divisible statute). In Descamps v. United States , 570 U.S. 254, 260, 133 S.Ct. 2276, 186 L.Ed. 2d 438 (2013), the United States Supreme Court further explained the modified categorical approach, noting that it "serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in [the relevant] conviction." Additionally, the Supreme Court explained that the modified categorical approach helps identify the subdivision at issue by allowing a court to review extra statutory material to "discover which statutory phrase, contained within a statute listing several different crimes, covered a prior conviction." (Internal quotation marks omitted.) Id., at 263, 133 S.Ct. 2276.
Threatening in the second degree in violation of § 53a-62 (a) is a class A misdemeanor; see General Statutes (Rev. to 2005) § 53a-62 (b) ; that is punishable by a sentence of imprisonment of "a term not to exceed one year ...." General Statutes § 53a-36. We begin by noting that § 53a-62 (a) appears to be a divisible statute **212 amenable to analysis under the modified categorical approach.[11] Each subdivision of § 53a-62 (a) requires proof of a different act or particular mental state. Under § 53a-62 (a) (1) and (2), the legislature requires proof of an intentional mental state. Specifically, subdivision (1) requires proof that an accused intentionally placed another person in fear of imminent serious physical injury, while subdivision (2) requires proof that an accused intentionally terrorized another person. Section 53a-62 (a) (3), however, requires proof that an accused recklessly disregarded the risk of causing terror in another person. See Guevara v. Holder , 533 Fed. Appx. 23, 26 (2d Cir. 2013) (New York assault statute was "likely a divisible statute, inasmuch as subsections [2] and [3] do not require a specific intent" and "[s]ubsection [1] involves an intent to injure"). These different mental states require us to determine whether all of the classes of criminal conduct encompassed in the statute "[shock] the public conscience ...." Rodriguez v. Gonzales , supra, 451 F.3d at 63.
In making this determination, we recognize that the Second Circuit has explained that, "[b]ecause [i]t is in the intent that moral turpitude inheres, the focus of the analysis is generally on the mental state reflected in the statute." (Internal quotation marks omitted.) Efstathiadis v. Holder , 752 F.3d 591, 595 (2d Cir. 2014). "Whether a crime is one involving moral turpitude depends on the offender's evil intent or corruption of the mind." (Internal quotation marks omitted.)
**213 Mendez v. Mukasey , supra, 547 F.3d at 347 ; see also Michel v. Immigration & Naturalization Service , 206 F.3d 253, 263 (2d Cir. 2000) ("corrupt scienter is the touchstone of moral turpitude"). It is undisputed that a threatening offense committed under subdivisions (1) and (2) of § 53a-62 (a), which *1154 require an intentional mental state, constitutes a crime of moral turpitude.[12] Thus, the focus of our inquiry is on whether a threatening offense committed with reckless disregard under § 53a-62 (a) (3) constitutes a crime of moral turpitude.
In the Second Circuit, "crimes committed recklessly (where recklessness is defined as a conscious disregard of substantial and unjustifiable risk) have, in certain aggravated circumstances , been found to express a sufficiently corrupt mental state to constitute a [crime of moral turpitude]." (Emphasis added.) Gill v. Immigration & Naturalization Service , 420 F.3d 82, 89 (2d Cir. 2005). The Second Circuit recently reaffirmed this proposition in Gayle v. Sessions , Docket No. 16-3953-ag, --- Fed.Appx. ----, 2018 WL 341736 (2d Cir. 2018), in which the court **214 concluded that "recklessness is 'a culpable mental state for moral turpitude purposes' when combined with aggravating circumstances." Importantly, the Second Circuit explained that "[c]rimes that are the equivalent of a simple assault do not present the aggravating circumstance necessary for a [crime of moral turpitude], but crimes involving more serious physical harm do." Id. As such, the Second Circuit has held that reckless assault was a crime of moral turpitude when the statute required proof of a deadly instrument and serious bodily harm. Gill v. Immigration & Naturalization Service , supra, at 89. Similarly, the Second Circuit recently concluded that reckless endangerment was a crime of moral turpitude because the statutory element of "danger of death or serious and protracted bodily injury" constituted the requisite aggravating circumstance. Gayle v. Sessions , supra, --- Fed.Appx. at ----, 2018 WL 341736, at *2 ; accord Idy v. Holder , 674 F.3d 111, 118 (1st Cir. 2012) (New Hampshire reckless conduct statute was crime of moral turpitude because of aggravating factor of placing "another in danger of serious bodily injury" [internal quotation marks omitted] ).
In the present case, § 53a-62 (a) (3) meets the Second Circuit's reckless mental state requirement for purposes of moral turpitude because, under Connecticut's penal statutes, a person acts recklessly "when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists." (Emphasis added.) General Statutes § 53a-3 (13). Under the Second Circuit's analysis, § 53a-62 (a) (3) is not, however, a crime of moral turpitude because it lacks the requisite aggravating factor. The statutory language requires that the accused threaten to commit a *1155 crime of violence in "reckless disregard of the risk of causing such terror"; General Statutes (Rev. to 2005) § 53a-62 (a) (3) ; which, "[i]n common parlance ... means to scare or to cause intense fear **215 or apprehension." State v. Crudup , 81 Conn. App. 248, 261, 838 A.2d 1053, cert. denied, 268 Conn. 913, 845 A.2d 415 (2004) ; see also State v. Kantorowski , 144 Conn. App. 477, 488, 72 A.3d 1228, cert. denied, 310 Conn. 924, 77 A.3d 141 (2013). In the absence of intent, therefore, it appears that the act of causing terror cannot qualify as an aggravating factor under the Second Circuit's formulation of the moral turpitude requirement, given that it has concluded that a physical act, namely, simple assault, does not. See Gayle v. Sessions , supra, --- Fed.Appx. at ----, 2018 WL 341736, at *2. As Judge Kelly of the Eighth Circuit has explained in concluding that Minnesota's reckless threatening statute, which is worded similarly to § 53a-62 (a) (3), is not a crime of moral turpitude, it is possible to violate that statute by a "joke or a flippant remark," a remark made in "transitory anger," or "even if no one actually experienced terror."[13] (Internal quotation **216 marks omitted.) Avendano v. Holder , 770 F.3d 731, 739-40 (8th Cir. 2014) (Kelly, J., concurring in part and dissenting in part). With this perspective, a reckless threat is a far cry from a reckless assault with a deadly instrument that results in serious bodily harm; see Gill v. Immigration & Naturalization Service , supra, 420 F.3d at 89 ; or reckless endangerment with the risk of death or serious protracted bodily injury; see Gayle v. Sessions , supra, --- Fed.Appx. at ----, 2018 WL 341736, at *2. Accordingly, we cannot conclude, for purposes of the present mootness inquiry, that a violation of § 53a-62 (a) (3) constitutes a crime of moral turpitude as a matter of law that would serve as a bar to the petitioner's reentry into the United States. Thus, the focus of our modified categorical analysis must turn to a determination of the subdivision of § 53a-62 (a) that forms the basis for the petitioner's conviction.
We now apply the modified categorical approach to determine the subdivision of § 53a-62 (a) under which the petitioner was convicted because it is a *1156 divisible statute; it proscribes both conduct that constitutes a crime of moral turpitude-crimes committed under the first two subdivisions-and some conduct that does not-crimes committed under the third subdivision. Accordingly, we now look to the record of conviction for the limited purpose of determining the subdivision of § 53a-62 (a) under which the petitioner was convicted. "The record of conviction includes, inter alia, the charging document, a plea agreement, a verdict or judgment of conviction, a record of the sentence, or a plea colloquy transcript." Mendez v. Mukasey , supra, 547 F.3d at 348. "With respect to guilty pleas, under the modified categorical approach as applied to immigration proceedings, the [Board of Immigration Appeals] may rely only upon facts to which a defendant necessarily pleaded in order to determine the type of conduct that represented the basis of an alien's conviction .... **217 [T]he necessarily pleaded language refers not just to whether a petitioner [pleaded] guilty to elements of the underlying ... offense, but also to whether by pleading guilty, he [pleaded] those facts necessary to establish that he violated a divisible statute in a manner that satisfies the grounds for removal." (Citations omitted; internal quotation marks omitted.) Akinsade v. Holder , supra, 678 F.3d at 144. Once the modified approach identifies the statutory subdivision at issue, the focus of the moral turpitude inquiry then returns to the elements of the offense without regard to the petitioner's individual conduct. See Flores v. Holder , 779 F.3d 159, 165 (2d Cir. 2015) ("[o]nce the correct alternative is identified, the focus must return to the elements, rather than the facts, of [the] crime" [internal quotation marks omitted] ).
As the parties and the Appellate Court acknowledge, the record in the present case provides little to no insight into which subdivision of § 53a-62 (a) to which the petitioner pleaded guilty. The only evidence contained in the record of conviction is the plea colloquy transcript and the information, neither of which indicate a charge of, or plea to, violating a specific subdivision of § 53a-62 (a). Specifically, count two of the information lists the offense committed as "threatening second degree." During the plea colloquy, the prosecutor asked the petitioner: "[Y]ou're charged in count two of the information with threatening second. How do you plead, guilty or not guilty?" (Emphasis added.) The petitioner responded, simply, "[g]uilty."
The commissioner claims, however, that the prosecutor's subsequent statement during the plea colloquy that the petitioner "made threats of potential bodily harm" to a victim, is sufficient to demonstrate that the petitioner pleaded guilty to violating subdivision (1) of § 53a-62 (a) because that is the only subdivision of the statute with a physical threat element. We disagree. The prosecutor's **218 statement is, by itself, insufficient to demonstrate that the petitioner pleaded guilty under subdivision (1) of § 53a-62 (a) because that subdivision requires that the accused intentionally placed another person in fear of "imminent serious physical injury ...." We have no evidence that the purported "threats of potential bodily harm," that the prosecutor referenced, were sufficient to place the victim in fear of imminent physical injury or that such physical injury was serious. Accordingly, given the lack of evidence in the record, we are unable to ascertain which subdivision of § 53a-62 (a) to which the petitioner pleaded guilty; put differently, he could have pleaded guilty to threatening in the second degree with an intentional or a reckless mental state. Given our conclusion that, in accordance with Second Circuit precedent, reckless threatening under *1157 § 53a-62 (a) (3) does not constitute a crime of moral turpitude as a matter of law, we cannot conclude that the petitioner was convicted of a crime of moral turpitude that is a "permanent ban from reentering this country ...." State v. Jerzy G. , supra, 326 Conn. at 221, 162 A.3d 692 ; see also Conboy v. State , 292 Conn. 642, 650, 974 A.2d 669 (2009) ("in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged" [internal quotation marks omitted] ).
Accordingly, in the absence of evidence of a crime of moral turpitude that would serve as a permanent ban from reentering this country, we conclude that the petitioner's assault conviction, which he challenges in the present habeas action, gives rise to a reasonable possibility of prejudicial collateral consequences-namely, his deportation and a barrier to reentry. See State v. Jerzy G. , supra, 326 Conn. at 221-23, 162 A.3d 692. The Appellate Court, therefore, improperly declined to reach the merits of the petitioner's appeal when it rendered judgment dismissing the petitioner's appeal as moot.
**219 The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the merits of the petitioner's appeal.
In this opinion the other justices concurred.

Section 1101 (a) (13) (C) of title 8 of the 2012 edition of the United States Code provides in relevant part: "An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien ...
"(v) has committed an offense identified in section 1182 (a) (2) of this title, unless since such offense the alien has been granted relief under section 1182 (h) or 1229b (a) of this title ...."
Section 1182 (a) of title 8 of the 2012 edition of the United States Code provides in relevant part: "Classes of aliens ineligible for visas or admission-Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States ...
"(2) Criminal and related grounds
"(A) Conviction of certain crimes
"(i) In general-Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of-
"(I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime ...." (Emphasis added.)

We originally granted the petitioner's petition for certification to appeal, limited to the following issue: "Whether the Appellate Court properly determined that threatening in the second degree in violation of General Statutes [Rev. to 2005] § 53a-62 categorically constitutes a crime of moral turpitude under 8 U.S.C. § 1101 (a) (13) (C) (v) of the [immigration act]?" St. Juste v. Commissioner of Correction , 316 Conn. 901, 901-902, 111 A.3d 470 (2015). We note that, following an unopposed motion, this court subsequently reformulated the certified issue: "Did the Appellate Court properly determine that the petitioner's appeal was moot?"

General Statutes (Rev. to 2005) § 53a-62 (a) provides: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury, (2) such person threatens to commit any crime of violence with the intent to terrorize another person, or (3) such person threatens to commit such crime of violence in reckless disregard of the risk of causing such terror."
We note that the legislature has made significant amendments to § 53a-62 since the events underlying the present appeal. See Public Acts 2017, No. 17-111, § 4; Public Acts 2016, No. 16-67, § 7. Hereinafter, all references to § 53a-62 in this opinion are to the 2005 revision of the statute.

Under North Carolina v. Alford , 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed. 2d 162 (1970), "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."

"[T]he record suggests that the petitioner was deported solely because of his conviction of assault in the second degree." St. Juste v. Commissioner of Correction , supra, 155 Conn. App. at 167 n.2, 109 A.3d 523.

"Subsequently, the court filed a signed transcript of its decision in accordance with Practice Book § 64-1 (a)." St. Juste v. Commissioner of Correction , supra, 155 Conn. App. at 167 n.3, 109 A.3d 523.

As the Appellate Court noted, on September 2, 2009, the immigration court denied the petitioner's motion "to defer his deportation to Haiti, and order[ed] his deportation. It appears that the [immigration] court relied solely on the petitioner's conviction of assault in the second degree, finding that he was subject to removal based on the clear and convincing evidence that he committed that offense, which it described as 'an aggravated felony crime of violence.' [See 8 U.S.C. § 1227 (a) (2) (A) (iii) (2012).] Also, the [immigration] court found that the petitioner had not met his burden of proving that it was more likely than not that he would be subject to torture upon his return to Haiti." (Footnote omitted.) St. Juste v. Commissioner of Correction , supra, 155 Conn. App. at 173, 109 A.3d 523.

The Appellate Court determined that the petitioner's threatening conviction, although a class A misdemeanor punished by a sentence of imprisonment of less than one year, was nevertheless not subject to any of the exceptions set forth in 8 U.S.C. § 1182 (a) (2) (A) (ii). See St. Juste v. Commissioner of Correction , supra, 155 Conn. App. at 176 and nn. 6 and 7, 109 A.3d 523.

In Dalton v. Ashcroft , supra, 257 F.3d at 204, the Second Circuit held: "In this Circuit, we have long endorsed categorical analyses of criminal statutes in the context of deportation orders for crimes of moral turpitude .... Our decisions in this area stand for the proposition that the offense, judged from an abstracted perspective, must inherently involve moral turpitude; in other words, any conduct falling within the purview of the statute must by its nature entail moral turpitude .... More recently, we have reaffirmed this approach ... [stating] that [a]s a general rule, if a statute encompasses both acts that do and do not involve moral turpitude, the [Board of Immigration Appeals] cannot sustain a deportability finding [predicated on moral turpitude, based] on that statute." (Citations omitted; internal quotation marks omitted.)

We released our decision in State v. Jerzy G. , supra, 326 Conn. at 206, 162 A.3d 692, after the parties filed their briefs in the present appeal but prior to oral argument. The parties have filed supplemental briefs addressing the effect, if any, of our decision in Jerzy G. on the present appeal, in response to our order issued on July 24, 2017.

We note that it appears that, even under the categorical approach, we would still be left to determine whether threatening in the second degree with a reckless mental state in violation of § 53a-62 (a) (3) constitutes a crime of moral turpitude. Cases from Second Circuit applying the categorical approach have held that, "[a]s a general rule, if a statute encompasses both acts that do and do not involve moral turpitude, the [Board of Immigration Appeals] cannot sustain a deportability finding [predicated on moral turpitude based] on that statute." (Internal quotation marks omitted.) Dalton v. Ashcroft , supra, 257 F.3d at 204.

Looking beyond the Second Circuit, we observe that the other Circuit Courts of Appeals have held that the crime of threatening, when committed with an intentional mental state, constitutes a crime of moral turpitude. See Javier v. Attorney General , 826 F.3d 127, 132 (3d Cir. 2016) ("a threat communicated with a specific intent to terrorize is an act accompanied by a vicious motive or a corrupt mind so as to be categorically morally turpitudinous" [internal quotation marks omitted] ); Latter-Singh v. Holder , 668 F.3d 1156, 1163 (9th Cir. 2012) ("Because [the California threatening statute] criminalizes only the [wilful] threatening of a crime that itself constitutes a crime of moral turpitude with the intent and result of instilling sustained and imminent grave fear in another ... it is categorically a crime involving moral turpitude"); Solomon v. Attorney General , 308 Fed. Appx. 644, 646 (3d Cir. 2009) (threatening is crime of moral turpitude when crime is threat "to commit any crime likely to result in death or in serious injury to person or property," which state court has interpreted to require both threat and "the intent to threaten or intimidate" [internal quotation marks omitted] ); Chanmouny v. Ashcroft , 376 F.3d 810, 814 (8th Cir. 2004) ("[w]e believe that the crime at issue in this case-threatening a crime of violence against another person with the purpose of causing extreme fear-likewise falls within the category of offenses requiring a vicious motive or evil intent").

Judge Kelly's contextual explanation of the use of the term "threat" leads us to disagree with the Appellate Court's reliance on that term, as defined by State v. Cook , supra, 287 Conn. at 257 n.14, 947 A.2d 307, in support of its determination that even reckless threatening is a crime of moral turpitude. See St. Juste v. Commissioner of Correction , supra, 155 Conn. App. at 180, 109 A.3d 523 (noting that "threat" is "an indication of something impending and [usually] undesirable or unpleasant [as] an expression of an intention to inflict evil, injury, or damage on another [usually] as retribution or punishment for something done or left undone" [emphasis in original; internal quotation marks omitted] ).
We note that the majority in Avendano v. Holder , supra, 770 F.3d at 733, concluded that Minnesota's reckless threatening statute constituted a crime of moral turpitude. Given that our federal analysis hews to the law of the Second Circuit, the Eighth Circuit's decision in Avendano is distinguishable, and ultimately unpersuasive in the context of this case, because it specifically rejects the Second Circuit's approach of requiring both a reckless mens rea and an aggravating act. See id., at 736. Particularly because our moral turpitude analysis, which determines whether the petitioner's habeas appeal is moot, is inherently predictive of how the Second Circuit would decide the petitioner's immigration case, we deem ourselves even more constrained by Second Circuit case law than we would be in resolving an ordinary question of federal law. See, e.g., Dayner v. Archdiocese of Hartford , supra, 301 Conn. at 783, 23 A.3d 1192 ; cf. Martinez v. Empire Fire & Marine Ins. Co. , supra, 322 Conn. at 62, 139 A.3d 611 ("[i]t would be strange indeed for federal statutes and regulations to apply differently, and potentially change the outcome of a case, based solely on which courthouse in Connecticut, state or federal, the plaintiff chooses for filling the action").