******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

WENDY GEORGES *v.* COMMISSIONER
OF CORRECTION
(AC 43145)

Elgo, Alexander and DiPentima, Js.

*Syllabus*

The petitioner, a Haitian national who had been convicted of reckless man-
slaughter in the first degree in violation of statute (§ 53a-55 (a) (3)),
sought a writ of habeas corpus, claiming that the habeas court improp-
erly concluded that he had not established that his trial counsel rendered
ineffective assistance in advising him of the immigration consequences
of his plea of nolo contendere. The petitioner asserted that his counsel
failed to advise him that his plea would result in certain deportation
because a conviction pursuant to § 53a-55 (a) (3) constituted a crime
of moral turpitude under federal law. The court rendered judgment
denying the habeas petition, from which the petitioner, on the granting of
certification, appealed to this court. *Held* that the habeas court properly
denied the petition for a writ of habeas corpus, the petitioner having
failed to satisfy his burden of demonstrating deficient performance on
the part of his trial counsel: contrary to the petitioner's claim that the
crime of which he was convicted was one of moral turpitude that would
result in definite deportation, there was no federal or Connecticut
authority holding that reckless manslaughter in the first degree consti-
tuted a crime of moral turpitude, and, although the petitioner's deporta-
tion was extremely likely as a result his plea, it was not a certainty, as
a practice guide that was available to his counsel at the time of the
plea advised that crimes of moral turpitude did not render noncitizens
removable in every case and that federal law permitted the waiver of
that ground for removal; moreover, the petitioner's testimony that he
would not have entered his plea had he known that there was a very
real risk of deportation was found to be not credible by the court, which
credited trial counsel's testimony that he had advised the petitioner that
his plea could very likely result in his deportation and that he should
expect the worst.

Argued December 7, 2020—officially released April 6, 2021

*Procedural History*

Amended petition for a writ of habeas corpus, brought
to the Superior Court in the judicial district of Tolland
and tried to the court, *Bhatt, J.*; thereafter, the petition
was withdrawn in part; judgment denying the petition,
from which the petitioner, on the granting of certifica-
tion, appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on
the brief, was *William A. Adsit*, assigned counsel, for
the appellant (petitioner).

*Nancy L. Walker*, assistant state's attorney, with
whom, on the brief, were *Michael L. Regan*, state's attor-
ney, and *Stephen M. Carney*, senior assistant state's
attorney, for the appellee (respondent).

*Opinion*

ELGO, J. The petitioner, Wendy Georges, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. In rejecting his ineffective assistance of counsel claim, the court concluded that the petitioner had not established deficient performance on the part of his trial counsel in advising him of the immigration consequences of his nolo contendere plea to a charge of reckless manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3). The petitioner now challenges the propriety of that determination. We affirm the judgment of the habeas court.

The petitioner is a Haitian national who moved to Connecticut in 2008. At all relevant times, the petitioner was a green card[1] holder and, hence, a lawful permanent resident who could be removed from the United States for committing a serious crime. See *Barton* v. *Barr*, U.S. , 140 S. Ct. 1442, 1445, 206 L. Ed. 2d 682 (2020). In 2010, the petitioner was involved in a homicide in Norwich.[2] He thereafter was arrested and charged with reckless manslaughter in the first degree in violation of § 53a-55 (a) (3).[3]

As the habeas court noted in its memorandum of decision, the petitioner's case "was discussed over the course of numerous [pretrial conferences]. . . . The matter was continued several times so that the petitioner could think about the plea offer." The petitioner ultimately entered into a plea agreement with the state, and a hearing was held on February 8, 2012. During the plea canvass conducted by the trial court, the petitioner affirmatively indicated that he had discussed his plea with his trial counsel, Attorney Bruce Sturman; that he was entering the plea voluntarily and of his own volition; and that he understood that, by pleading nolo contendere, he was forfeiting his right to require the state to prove his guilt beyond a reasonable doubt at a trial. The court explained to the petitioner that he faced a maximum sentence of twenty years of incarceration, and the petitioner acknowledged that, in exchange for his plea, a sentence of twelve years and six months of incarceration with seven years of special parole would be imposed.

The court also informed the petitioner that his plea "can have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization" if he was not a citizen of the United States. The petitioner indicated that he understood that admonition and that he had discussed the issue with Sturman.

At that time, Sturman addressed the court and confirmed that he had apprised the petitioner of the possible immigration consequences of his plea. He stated in relevant part: "[W]e have discussed at length the immigration ramifications of this plea. I have been in

touch with a . . . pro bono group out of Hartford that assists folks who have immigration issues, and I have alerted them to [the petitioner's] plight. I will be giving that information both to my client and to his wife, and I am confident that when he gets close to the end of his sentence . . . they will get involved and represent him with regard to future immigration proceedings." The following colloquy between the court and Sturman then ensued:

"The Court: . . . I am far from an expert on immigration . . . but I would imagine that, with a conviction of manslaughter in the first degree, [the petitioner] runs a very serious risk . . . of being deported.

"[Sturman]: That's my concern. [The petitioner and I have] discussed that. I mean, immigration is deporting folks with [driving under the influence] convictions.

"The Court: I know. . . . I'm not allowed to ask him whether he has [citizenship] issues, but obviously . . . I would assume that if somebody has citizenship issues . . . this would be the type of conviction that you'd be deported on.

"[Sturman]: That's our concern."

The court then accepted the petitioner's plea of nolo contendere to one count of reckless manslaughter in the first degree, finding that it was predicated on an adequate factual basis and that it was "voluntarily and understandably made with the assistance of competent counsel."

The petitioner's sentencing hearing was held on April 12, 2012. After reciting the factual basis for the plea and the terms of the sentence, the prosecutor stated: "[M]y best understanding is that, at the end of this total sentence, [the petitioner] would be deported." In its remarks, the court likewise noted that the petitioner "is going to be going to prison for years and, most likely, with immigration issues, will then be deported . . . ." The court then sentenced the petitioner in accordance with the terms of his plea.

On August 15, 2013, the petitioner filed a pro se petition for a writ of habeas corpus; an amended petition was filed by the petitioner's habeas counsel, James E. Mortimer, on November 7, 2018. The amended petition alleged that Sturman's representation was ineffective in that, inter alia, he "failed to advise the petitioner of the likelihood of deportation following a plea of guilty . . . ."[4] Following a trial, the habeas court concluded that the petitioner had failed to demonstrate that Sturman rendered deficient performance in that regard. Accordingly, the court denied the petition for a writ of habeas corpus. The court thereafter granted certification to appeal from the judgment denying the habeas corpus petition, and this appeal followed.

On appeal, the petitioner claims that the court

improperly concluded that he had not established ineffective assistance on the part of Sturman in advising him of the immigration consequences of his nolo contendere plea. We do not agree.

At the outset, we note that the "standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a [petitioner] received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . . In order to prevail on an ineffective assistance of counsel claim, the [petitioner] must show: (1) that counsel's representation fell below an objective standard of reasonableness . . . and (2) that defense counsel's deficient performance prejudiced the [petitioner]." (Citation omitted; internal quotation marks omitted.) *Gray* v. *Commissioner of Correction*, 99 Conn. App. 444, 447–48, 914 A.2d 1046, cert. denied, 282 Conn. 925, 926 A.2d 666 (2007). As our Supreme Court has observed, "[a] reviewing court can find against a petitioner on either [prong], whichever is easier." (Emphasis omitted; internal quotation marks omitted.) *Sanchez* v. *Commissioner of Correction*, 314 Conn. 585, 606, 103 A.3d 954 (2014).

In the present case, the court's decision was predicated on the deficient performance prong. "In order for a petitioner to prevail on a claim of ineffective assistance on the basis of deficient attorney performance, a defendant must show that, considering all of the circumstances, counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. . . .

"Furthermore, our review of counsel's performance is highly deferential. . . . [A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Citations omitted; internal quotation marks omitted.) *Meletrich* v. *Commissioner of Correction*, 332 Conn. 615, 627, 212 A.3d 678 (2019); see also *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 517 n.2, 142 A.3d 243 (2016) (burden is on petitioner to prove that counsel failed to properly advise on immigration consequences of plea).

At the habeas trial, Sturman testified that, as a public defender, he received training on the collateral consequences of criminal convictions and routinely advised

clients "about the deportation ramifications . . . ." Because the petitioner "was not an American citizen," Sturman testified, he had advised the petitioner that "a guilty plea could very well likely result in his deportation . . . ." Sturman also testified that, prior to the plea hearing, he consulted with a pro bono organization with immigration expertise regarding the petitioner's case, which cautioned Sturman that the petitioner should "expect the worst." As a result, Sturman testified, he informed the petitioner that "he would probably get deported; that he should, you know, hope for the best but expect the worst" and that "the chances were very good that [he would be] deported . . . ."

The petitioner, by contrast, testified at the habeas trial that Sturman had not advised him of the immigration consequences of his plea. As a result, the petitioner testified that he did not understand what effect his plea would have on his immigration status. The petitioner claimed that, had he known that there was a "very real risk of deportation," he would not have accepted the nolo contendere plea.

It is well established that an appellate court cannot "evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Sanchez* v. *Commissioner of Correction*, supra, 314 Conn. 604; see also *Breton* v. *Commissioner of Correction*, 325 Conn. 640, 694, 159 A.3d 1112 (2017) ("a pure credibility determination . . . is unassailable"). In the present case, the court expressly credited Sturman's testimony that he had advised the petitioner that he very likely would be deported as a result of his plea. The court also found that the petitioner's testimony to the contrary was not credible. This court cannot disturb those credibility determinations. See *Bowens* v. *Commissioner of Correction*, 333 Conn. 502, 523, 217 A.3d 609 (2019).

The petitioner nevertheless contends that Sturman rendered deficient performance by failing to advise him that his plea would result in *certain* deportation. He claims that, at the time of his plea hearing in 2012, a conviction of reckless manslaughter in the first degree under § 53a-55 (a) (3) constituted a crime of moral turpitude that would result in "definite deportation."

In *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), the United States Supreme Court held that the right to effective assistance of counsel mandated by the sixth amendment to the United States constitution requires a criminal defense attorney to advise a defendant "whether [a guilty] plea carries a risk of deportation." Id., 374. "[T]he precise advice

counsel must give depends on the clarity of the consequences specified by federal immigration law." *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 511. In *Padilla*, the high court recognized that "[i]mmigration law can be complex, and it is a legal specialty of its own." *Padilla* v. *Kentucky*, supra, 369. For that reason, the court explained that, "[t]here will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear." (Footnote omitted.) Id.

In the present case, the law on the immigration consequences of the petitioner's plea is not succinct and straightforward. Although federal law mandates deportation for persons convicted of certain categories of offenses, such as aggravated felonies and controlled substance offenses; see 8 U.S.C. § 1227 (a) (2) (A) (iii) and (2) (B) (2018); the petitioner concedes that his plea involved neither an aggravated felony nor a controlled substance offense. Rather, he argues that his plea to one count of reckless manslaughter in the first degree under § 53a-55 (a) (3) constituted a crime of moral turpitude, as defined in 8 U.S.C. § 1101 (a) (13) (C) (v) of the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq.[5]

As the United States Court of Appeals for the Seventh Circuit has noted, "the phrase 'crime involving moral turpitude' is notoriously baffling . . . ." *Garcia-Meza* v. *Mukasey*, 516 F.3d 535, 536 (7th Cir. 2008); see also *People* v. *Valdez*, 37 N.E.3d 837, 843 (Ill. App. 2015) ("[m]oral turpitude is a notoriously difficult phrase to define"), rev'd on other grounds, 67 N.E.3d 233 (Ill. 2016), cert. denied,      U.S.     , 137 S. Ct. 1386, 197 L. Ed. 2d 563 (2017). The United States Court of Appeals for the Ninth Circuit similarly has observed that " 'moral turpitude' is perhaps the quintessential example of an ambiguous phrase." *Marmolejo-Campos* v. *Holder*, 558 F.3d 903, 909 (9th Cir.), cert. denied, 558 U.S. 1092, 130 S. Ct. 1011, 175 L. Ed. 2d 620 (2009). That phrase is not defined by statute or federal regulation. See *Alonzo* v. *Lynch*, 821 F.3d 951, 958 (8th Cir. 2016) ("[a]lthough the immigration laws have directed the exclusion of persons convicted of crimes involving moral turpitude since 1891, Congress has never defined the term" (internal quotation marks omitted)); *State* v. *Ortiz-Mondragon*, 364 Wis. 2d 1, 24, 26, 866 N.W.2d 717 (2015) (noting that "the amorphous term 'crime involving moral turpitude' is not defined" by either federal Immigration and Nationality Act or Code of Federal Regulations). As

Justice Alito noted in his concurring opinion in *Padilla*, "determining whether a particular crime is . . . a 'crime involving moral turpitude' . . . is not an easy task." *Padilla* v. *Kentucky*, supra, 559 U.S. 378 (Alito, J., concurring in the judgment); accord *Rohit* v. *Holder*, 336 Fed. Appx. 672, 673 (9th Cir. 2009) (question of whether particular offense constitutes crime involving moral turpitude "is a complex one").

There is no Connecticut or federal authority holding that a conviction of reckless manslaughter in the first degree under § 53a-55 (a) (3) constitutes a crime of moral turpitude. Nor did any such authority exist at the time that Sturman represented the petitioner in 2012. In his appellate brief, the petitioner concedes that "not all reckless crimes" are ones involving moral turpitude. Relying on the United States Board of Immigration Appeals decision in *Matter of Medina*, 15 I. & N. Dec. 611 (B.I.A. 1976), the petitioner nonetheless submits that crimes "involving recklessness and a deadly weapon do implicate moral turpitude." *Matter of Medina* involved a conviction of aggravated assault under an Illinois statute that included the use of a deadly weapon as an element of the offense. The petitioner thus reasons that, because he used a knife to stab the victim in the present case, his conviction under § 53a-55 (a) (3) necessarily is one involving moral turpitude. The petitioner overlooks the fact that our Supreme Court has instructed that, in determining whether a crime is one involving moral turpitude, "we look only to the minimum criminal conduct necessary to satisfy the essential elements of the crime, not the particular circumstances of the defendant's conduct." (Internal quotation marks omitted.) *St. Juste* v. *Commissioner of Correction*, 328 Conn. 198, 210, 177 A.3d 1144 (2018). The use of a deadly weapon is not an element of § 53a-55 (a) (3). See footnote 3 of this opinion.

As the United States Court of Appeals for the Second Circuit has observed, the Board of Immigration Appeals "has explained that the term moral turpitude generally encompasses . . . conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." (Internal quotation marks omitted.) *Rodriguez* v. *Gonzales*, 451 F.3d 60, 63 (2d Cir. 2006). It may well be that the offense of reckless manslaughter in the first degree under § 53a-55 (a) (3) involves conduct that satisfies that standard. See *Matter of Wojtkow*, 18 I. & N. Dec. 111, 113 (B.I.A. 1981) (concluding that conviction under New York reckless manslaughter statute "[did] involve moral turpitude"); cf. *St. Juste* v. *Commissioner of Correction*, supra, 328 Conn. 214 (concluding that conviction of reckless threatening in violation of General Statutes § 53a-62 (a) (3) "is not . . . a crime of moral turpitude because it lacks the requisite aggravating factor"). In this case, we are not called on to resolve that

question. Rather, the issue in this case is simply whether, at the time of the petitioner's plea hearing in 2012, the law was "succinct and straightforward" and "truly clear"; *Padilla* v. *Kentucky*, supra, 559 U.S. 369; that a violation of § 53a-55 (a) (3) constituted a crime of moral turpitude that would result in the petitioner's certain deportation.

Although deportation may have been very likely, we do not agree with the petitioner's contention that "his deportation was inevitable" as a result of his plea. (Emphasis omitted.) In *Padilla*, the court emphasized the importance of consulting practice guides for advice on how to proceed when considering immigration consequences of a plea. *Padilla* v. *Kentucky*, supra, 559 U.S. 368. One such guide that was available to Sturman at the time of the petitioner's plea hearing advised that, unlike aggravated felonies, crimes involving moral turpitude "do not render a noncitizen removable in every case—[it] will depend on the immigration status, prior criminal record, and actual and potential sentence for the offense." J. Baron, A Brief Guide to Representing Non-citizen Criminal Defendants in Connecticut (Rev. 2010). That guide also advised that, "even if removable," noncitizens convicted of a crime involving moral turpitude "may still be eligible for discretionary relief from deportation . . . ." (Emphasis omitted.) Id. For example, under federal law, the United States Attorney General is permitted to waive certain grounds of inadmissibility, including conviction of a crime of moral turpitude, if the alien's removal would result in "extreme hardship" to a lawful resident family member.[6] 8 U.S.C. § 1182 (h) (1) (B) (2018); see also *Palma-Martinez* v. *Lynch*, 785 F.3d 1147, 1149 (7th Cir. 2015).

In light of the foregoing, we conclude that, although the petitioner's deportation was extremely likely as a result of his plea in 2012, it was not a certainty. For that reason, we agree with the habeas court that Sturman "adequately conveyed the near certainty of deportation to the petitioner." The court credited Sturman's testimony that he advised the petitioner that his plea "could very well likely result in his deportation," that the petitioner "would probably get deported" and that the petitioner should "expect the worst."

As the United States Supreme Court emphasized in *Padilla*, surmounting the high bar necessary to establish ineffective assistance of counsel "is never an easy task"; *Padilla* v. *Kentucky*, supra, 559 U.S. 371; and, in the absence of evidence to the contrary, a reviewing court "should . . . presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty." Id., 372; see also *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 517 n.2 ("the habeas court must presume that counsel acted competently and the burden lies with the petitioner . . . to overcome this presumption and

prove that [counsel] failed" to properly advise on immigration consequences). In the present case, the habeas court properly determined that the petitioner has not satisfied his burden of demonstrating deficient performance on the part of Sturman.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "A 'green card' is a document which evidences an alien's permanent residence status in the United States." *Singh* v. *Singh*, 213 Conn. 637, 640 n.3, 569 A.2d 1112 (1990).

[2] As the prosecutor recounted at the petitioner's plea hearing: "This [altercation] occurred . . . on the 14th of December, 2010. Shortly after midnight, police officers responded to a 911 call . . . . When they [arrived], they located a person identified as the victim . . . who was ultimately pronounced dead at the [hospital]. It was determined that he had been stabbed, which was the cause . . . of his death. Police officers spoke to witnesses who were at the scene. They said that [the petitioner] and the victim had been playing cards, that there had been an accusation of cheating, and, at one point, the [petitioner] grabbed the victim by the throat, the victim pulled out a knife, people restrained both parties, and then . . . [the petitioner] broke free and stabbed the victim in the back, ultimately killing him . . . ."

[3] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[4] In his amended petition, the petitioner raised six additional grounds for his ineffective assistance of counsel claim, two of which he withdrew at his habeas trial. With respect to the four other grounds, the habeas court concluded that the petitioner had not established deficient performance on the part of Sturman. In this appeal, the plaintiff does not challenge that determination.

[5] Section 1101 (a) (13) (C) of title 8 of the United States Code provides in relevant part: "An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien . . .

"(v) has committed an offense identified in section 1182 (a) (2) of this title, unless since such offense the alien has been granted relief under section 1182 (h) or 1229b (a) of this title . . . ."

Section 1182 (a) of title 8 of the United States Code provides in relevant part: "Classes of aliens ineligible for visas or admission

"Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States . . .

"(2) Criminal and related grounds

"(A) Conviction of certain crimes

"(i) In general

"Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—

"(I) *a crime involving moral turpitude* (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . . ." (Emphasis added.)

[6] At the habeas trial, the petitioner testified that he moved to the United States to join his wife in 2008, explaining that she had completed "the [immigration] paperwork for me to move here with her after two years."